## GUPTIL & HINTON v. H. McFEE, *et al.*

1. EXEMPTION—*Partnership Property.* The provisions of the eighth subdivision of § 3 of the exemption law, (ch. 38, Gen. Stat.,) do not apply to partnership property; and partnership property in the hands of the firm is not exempt by law from an execution against the firm.

2. —————— *Stock in Trade.* Neither do said provisions apply to goods bought to be sold again as merchandise, but only to the tools, implements, and stock in trade of a mechanic, miner, or some other person who earns his livelihood in whole or in part by the use of tools or implements, and to the exercise of whose trade or business tools are necessary.

*Error from Miami District Court.*

REPLEVIN, brought by *E. A. Guptil* and *Charles Hinton,* as partners, against David Anderson, sheriff of Miami county,

to recover certain personal property described in the petition as follows: "About 300 lbs. of fresh pork, worth $19.50; about 700 lbs. of fresh beef, worth $45.50; 100 lbs. of smoked hams, worth $12.50; 125 lbs. smoked shoulders, worth $18.00; one bbl. of pickles, worth $12.00; 60 lbs. dried beef, worth $9.60; 100 lbs. of mutton, worth $7.00; counter and racks, worth $16.00; sausage machine, worth $35.00; cleaver and knives, worth $1.00; kettle and furnace, worth $45.50; fifteen reams of wrapping paper, worth $6.20; one tub, worth $1.25; one set Fairbanks' scales, worth $16.00; and 30 lbs. sausage, worth $3.75. Total value, $241.80." The sheriff's answer showed that he had seized and taken said property upon an execution issued to him on a judgment rendered in favor of *McFee & Riley* and against said *Guptil & Hinton*. *McFee & Riley* were joined as co-defendants. Plaintiffs claimed that said property was "exempt by law from seizure upon said execution." The case was tried at the May Term 1871, and judgment was given for the defendants. Plaintiffs bring the case here for review.

*W. R. Wagstaff*, for plaintiffs in error:

1. The evidence shows that both the plaintiffs were and are heads of families, residing in Paola when the levy was made; both depending solely upon the butchering business for the support of themselves and families; that the sausage-machine was stationary, and used in the manufacture of sausage; the cleaver and knife were used in cutting up the meat; the kettle was used for trying out the tallow; Fairbanks' scales were used for weighing out things in gross; the counter was used for packing meat and other purposes; these things are all such things as are usually kept in butchering establishments, and the tools named are all necessary in carrying on plaintiffs' trade and business, and they could not get along without them.

2. The articles mentioned are exempt from execution: Subdivision 8 of § 3 of ch. 38, Gen. Stat. In *Grimes v. Bryne*, 2 Minn., 104, 105, the court, in speaking of a statute

Guptil v. McFee.

like ours, uses these words: "The words of the eighth sub-division were intended to comprehend a class of citizens who earn their livelihood by the use of tools and instruments, *in whole* or *in part.*" Guptil & Hinton depended solely upon the proceeds of the butchering business, in which they were then engaged, for support, each having a family dependent upon him; and the stationary sausage-machine, cleaver and knife, kettle, scales, counter and rack were all shown to be necessary in carrying on the butchering trade and business. This brings the case within the spirit and meaning of the statute, as interpreted and explained by the supreme court of the state of Minnesota. See also 4 National Bankruptcy Register, 189.

3. The court erred in charging the jury that if a man is a merchant or trader he is not entitled to the exemption of $400 "stock in trade," regardless of the tools or implements that may be necessarily used in carrying on the business or trade. The law of the case is, that where tools and implements are necessary to be used and kept for carrying on a trade or business, the tools and implements are exempt, and $400 worth of stock in trade in addition. The sense of the phrase "stock in trade," as used in the law, has reference to business, commerce, etc. It means a fund, a capital, money, goods, employed in trade. It may be anything necessary in carrying on a particular branch of business. The law, in express words, is for the benefit of the trader or business man, who necessarily uses tools or implements in his trade.

*Oscar A. Touslay,* for defendants in error:

1. Sec. 3, of ch. 38, General Statutes, exempts from seizure and sale upon execution among other things the grain, meat, vegetables, groceries and other provisions "*on hand* necessary for the support of the debtor and his family;" also, "stock in trade" to the amount of $400. The testimony shows that the plaintiffs in error had none of the articles or property set apart for, and *on hand* for the support of their

families, but supported the same from profits made on daily sales of merchandise.

2. A butcher who kills only such cattle as he has reared himself is not a trader. But if he buy them, and kill and sell them with a view to profit, he is a trader. 2 Bouv. Law Dic., title, *Trader;* 4 Burr., 21, 47; 2 Wils., 169. A trader is one who makes it his business to buy merchandise, or goods and chattels and sell the same for profit. The quantum of dealing is immaterial where the intention to deal generally exists. 2 Kent's Com., 389; 2 Stephens' Com., 145; 2 Bl. Com., 476; 4 Penn. St., 472. A merchant is one whose business is to buy and sell merchandise. This applies to all persons who habitually deal in merchandise. 2 Bouv. Law. Dic., *Merchant;* Burrill L. Dic., 193; 2 Shaw, 326.

3. The "stock in trade" of a trader or merchant is not exempt from execution. 2 Minn., 91. The words, "other person" in our statute do not mean all persons engaged in business, but artisans, mechanics, miners, and similar persons who earn their living by the use of tools. 2 Minn., 91; 1 Bish. Cr. Law, 275.

Our statute was made to protect the day laborer, the miner, artisan and poor mechanic and their families, and not to aid the tradesman and the merchant.

The opinion of the court was delivered by

VALENTINE, J.: E. A. Guptil and Charles Hinton were partners in business. H. McFee and H. Riley obtained a judgment against them, and an execution was issued on said judgment. The officer to whom the execution was directed levied on the partnership goods of Guptil & Hinton, and took them into his possession. Guptil & Hinton in a joint action as partners then replevied them from the officer, claiming that the goods were exempt by law from execution. A trial was had in the replevin case before the court and a jury. The verdict was for the defendants, (the officer and McFee and Riley,) and against the plaintiffs, Guptil & Hinton, and judg-

ment was rendered accordingly. The plaintiffs bring the case to this court.

We have all the evidence presented to the court below before us. The facts were undisputed. In fact they were nearly all admitted by the pleadings, and the others were indisputably shown by the evidence. There was no conflict in the evidence. The only question therefore which was to be determined in the court below, and to be determined here, is purely a question of law. That question is, whether partnership property consisting principally of merchandise bought to be sold again for profit is, while still in the hands of the firm, exempt by law from an execution against the firm. If said property was exempt the judgment of the court below is erroneous. If it was not exempt, then the judgment is correct. We shall not examine the rulings of the court below in detail, but will simply consider whether the said property was exempt or not. The plaintiffs in error claim that the said goods were exempt under the eighth subdivision of § 3 of the exemption law, which reads as follows :

"Sec. 3. Every person residing in this state, and being the head of a family, shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in this state, the following articles of personal property: * * * *Eighth,* The necessary tools and implements of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business, and in addition thereto stock in trade not exceeding four hundred dollars in value." (Gen. Stat., 473.)

We suppose it will be admitted that the said goods were not exempt at all unless they were exempt under the provision of the statute just quoted. We are of the opinion that they were not exempt at all, and for the following reasons: First, they were all partnership goods, still in the hands of the firm against whom the execution was issued, and hence said exemption law does not apply: *Pond v. Kimball,* 101 Mass., 105. Second, they were (principally if not entirely) goods bought to be sold again as merchandise, and were not the goods, the tools, implements, or stock in trade, of a mechanic,

miner, or some other person, who earned his livelihood in whole or in part by the use of tools or implements, and to the exercise of whose trade or business tools or implements were necessary. *Grimes v. Bryne*, 2 Minn., 90, 104, 105.

The reasons given in the case of *Pond v. Kimball*, supra, why partnership goods are not exempt from execution are very strong, and we could not if we would, add anything to them. That our statute exempts property in favor of individual persons only, and not in favor of copartnerships or corporations, we would suppose would hardly be controverted; and yet it seems to be controverted in this very action. The plaintiffs in this action sue jointly, as partners. They claim as partners that the property is exempt. The property has never been divested of its partnership character. Now if it be admitted that our statute exempts property in favor of a copartnership or corporation, will it be claimed that such copartnership or corporation may take four hundred dollars worth only of stock in trade, as an individual may, or will it be claimed that such copartnership or corporation may take an amount equal to four hundred dollars for each individual member of the copartnership or corporation, let the number of such members be great or small? And how is it to be determined whether the copartnership or corporation will desire to reserve anything as exempt? May a majority of the members determine the matter? Or may those who own an interest greater than one-half determine the matter? And will the minority, or those who represent the less interest, be governed by the majority, or those who represent the greater interest, or *vice versa?* If one portion of the members is not to be governed by the other portion, or if four hundred dollars' worth of the property is to be exempt in favor of some of the members, and not in favor of others, how is the exempted property to be separated from the balance? Can the officer effect the separation? Can any number of the members less than a majority, or can even a majority do it? Some of the members may have a great interest in the copartnership or corporation. Others may have only a small

interest. Some members of a copartnership have only a slight interest in the profits of the business. But if we adopt the theory, which is the true one, that the exemption is in favor of individuals only, and not in favor of copartnerships or corporations, we are equally led to the conclusion that partnership property is not exempt from execution. "Property belonging to the firm cannot be said to belong to either partner as his separate property. · He has no exclusive interest in it. It belongs as much to his partner as it does to him, and cannot in whole or in part be appropriated (so long as it remains undivided) to the benefit of his family. It may be wholly contingent and uncertain whether any of it will belong to him on the winding up of the business, and the settlement of his account with the firm." (*Pond v. Kimball*, 101 Mass., 107.) Suppose the firm should consist of twenty members: could they hold in the aggregate $8,000 worth of property, as "stock in trade," exempt from execution, and continue to do business on it without paying their partnership debts, or would they be confined to $400 worth? And suppose that nineteen of the members had no property in the world not exempt from execution, and that the twentieth one had an abundance outside of the copartnership property: could these nineteen, by claiming their exemptions, compel the twentieth one to pay all the copartnership debts? And suppose this twentieth one owned nearly all the capital that had been put into the copartnership: could the nineteen hold their exemptions not only as against the creditors of the firm and others, but also against this twentieth member? We think not. One partner has just as much right to control the disposition of partnership property as another. One partner has just as much right to say that a certain specific article of partnership property shall not be exempt, as another has to say that it shall be exempt. In fact he has a better right, for the partnership was certainly not created for the purpose of holding property exempt from execution. If a party desires to retain his personal property as exempt from execution, he must either not put it into a copartnership, or

he must get it out of the copartnership and make it his own exclusively before an execution against the firm is levied on it.    If the execution should be against him alone, we of course express no opinion.    Neither do we express any opinion where his interest in the property is fixed and certain, as a joint interest, or an interest in common, or an interest consisting of an aliquot part, and not merely a contingent copartnership interest.    The case of *Pond v. Kimball* was decided by the supreme court of Massachusetts in 1869, and is the last decision upon this question that we are aware of. Two years before that time (in 1867,) the Court of Appeals of New York decided the same question : *Stewart v. Brown,* 37 N. Y., 350.    We know of no other decisions on the question.    The decision in New York is exactly the reverse of the decision in Massachusetts.    But while the Massachusetts decision is the most recent, we also think the reasons that it gives are much the stronger, and therefore we follow it in preference to the New York decision.

Upon the other proposition there are no conflicting decisions.    It has been decided in Minnesota upon a statute almost identical with ours as follows :  "The exemption law does not contemplate that all or any of the enumerated articles shall be exempt in the hands of every citizen without regard to circumstances, but must receive a construction in accordance with its general intent.    The words of the eighth section (subdivision) were intended to comprehend a class of citizens who earn their livelihood by the use of tools and implements, in whole or in part.    A man may derive his principal support from some business in the exercise of which tools and implements are necessary, and still not be strictly a mechanic or miner.    Such persons were intended to be included by the words, 'or other person,' in this subdivision of the act, and it should read 'the tools and instruments (implements) of every mechanic, miner or other person *to the exercise of whose trade or business tools or implements are necessary,* used or kept for the purpose of carrying on his trade or business, etc.    And the next clause of the same subdivision, 'and in

addition thereto stock in trade not exceeding four hundred dollars in value,' applies only to the same class of 'mechanics, miners or other persons,' and not to tradesmen and merchants generally, in the exercise of whose profession or business tools and implements are unnecessary." *Grimes v. Bryne,* 2 Minn., 90, 104, 105. For the reasons to support this proposition, we would refer to those given by the Minnesota court.

It is probable that if the property levied on in this case, had not been partnership property a very small portion of the same would have been exempt. But as all of it was partnership property, and very nearly all of it merchandise, none of it was exempt. The judgment of the court below is affirmed.

KINGMAN, C. J., concurring.