## Case No. 10,866.

### In re PEABODY.

[16 N. B. R. 243; [1] 9 Chi. Leg. News. 409.]

District Court, D. Colorado. 1877.

BANKRUPTCY — AUTHORITY OF REGISTER TO SET OFF EXEMPT PROPERTY—REGULARITY OF ORDER — APPLICATION BY ASSIGNEE FOR DISCHARGE — MISCONDUCT—COST OF KEEPING AND DISPOSING OF PROPERTY CHARGED WITH LIEN.

1. A register has no authority to set off exempt property to the bankrupt, nor to direct the assignee in the matter.

2. An ex parte order approving the schedule of property set aside to the bankrupt, or confirming a report of sale of assets, made on the day such schedule or report is filed, is irregular and therefore not binding upon the creditors.

3. The bankrupt court has power to set aside such orders at any time during the pendency of the proceedings, where an aggrieved party moves therefor within a reasonable time after notice.

4. Creditors are not bound to except to the schedule of exempt property within twenty days after it is filed, where the assignee has failed to file it within twenty days after the assignment.

5. Under the statute of Colorado a merchant is not entitled to an exemption of two hundred dollars worth of goods as "stock in trade;" he is entitled to a horse, as a "working animal," but not to a buggy.

6. On an application by the assignee for his discharge, any misconduct on his part in respect to the estate is a proper subject for examination.

7. Every fact which is relied on to establish fraud should be distinctly stated and verified; and the creditor raising the issue should give security for costs.

8. Where property taken by the assignee is charged with a lien, the reasonable cost of keeping and disposing of it, including the assignee's fees, should be charged upon it. No charge can be allowed for the services of an auctioneer unless it be shown that such services were necessary; nor can such fund be charged with attorney's fees for services rendered to the assignee in his contest with the lienor respecting such property.

[In the matter of David G. Peabody, a bankrupt.]

Blake & Jacobson, for assignee.
Thos. Macon, for Russell.

HALLETT, District Judge. In December last the assignee filed a report of sales made by him of goods belonging to the estate, and of certain property set off to the bankrupt as exempt, which report was on the same day approved by the judge then presiding in this court. Edward Russell, a creditor who obtained a lien upon all of the goods so sold, and some of the goods so set off, by judgment and execution against the bankrupt before the petition in bankruptcy was filed, now complains of this order of the court as having been irregularly entered, and moves to set it aside. He also objects upon several grounds to the report of the assignee, but these objections cannot be considered while the order approving the report is allowed to

stand. To explain the force and effect of this order, it will be necessary to state some of the facts presented in the record. The petition in bankruptcy was filed in the district court of the Third district of the late territory, April 28, 1876, and the assignee was chosen and appointed on the 20th of May thereafter. On the same 20th of May, 1876, the register of that district made out and signed a paper in the form No. 20, adopted by the supreme court, which was doubtless intended to be a schedule of the property set aside to the bankrupt under the exemption laws. Upon examination, however, it will be found to have but few of the requisites of such a schedule. In the first place it was made by the register, the act (section 5045) and the general order (19) requiring that it shall be made by the assignee. It is true that the form No. 20 has the words "district judge (or register)" at the foot, apparently indicating that it is to be signed by one of those officers. But this is obviously a mistake of the draughtsman, for the act of setting apart exempt property cannot be performed by either the judge or register consistently with the provisions of the law. The property is in the possession of the assignee, and he only can deliver it. The act imposes upon him the duty of selecting the articles to be set apart to the bankrupt, and provides for reviewing his decision. The general order requires him to report to the court the articles set apart by him, with the value of each, within twenty days after receiving the deed of assignment, and provides that creditors may except to his report. Usually and properly this report is made to the register, who also hears the exceptions of creditors, and his decision, if unsatisfactory to either of the parties, is reviewed by the court. All this is utterly inconsistent with the notion that the register may set off the property to the bankrupt in the first instance; a notion which has no other foundation than the mistake made in appending unnecessary words to the form.

If it is claimed that this paper is a direction from the register to the assignee as to the property to be set off to the bankrupt, the reply is that the register had no authority to give such direction. His duty is confined to receiving and filing the schedule after it has been made by the assignee, and passing upon the exceptions, if any are made by creditors. The matter of designating the property which is exempt from the operation of the act is entrusted to the assignee, and his discretion cannot be controlled or supported by a direction from any source previously given. But if the schedule had been made by the assignee, it does not appear to have been reported to the court, as required by the general order. It was not filed with the register; nor with the clerk until December 22d, 1876, when it was approved by the court. It seems to have been kept by the assignee, for it is attached to his report made in Decem-

1 [Reprinted from 16 N. B. R. 243, by permission.]

ber, which contains all his doings up to that time. But wherever it may have been it was not in the proper place, and creditors had no opportunity to except to it before it was aproved by the court. If a proper schedule had been filed with the register within twenty days after the assignment, as required by general order 19, and no exceptions thereto had been filed within twenty days thereafter, probably all creditors would be precluded from objecting at this time. For the protection of an assignee who has performed his duty fairly, creditors ought to bring forward their objections to the schedule, if they have any, at an early day, as the rule requires. But if an assignee withholds his report until long after the time specified in the rule has expired, he cannot, by an order obtained ex parte, shut off inquiry as to the regularity of his proceedings. These objections to the schedule appear to be substantial, and to demand the revocation of the order made by my predecessor.

Another objection to the schedule, prepared by the register, is found in the fact that there is no sufficient description of the articles set off, nor is the value of each given. This was corrected to some extent, but not fully, in a distinct schedule filed with the other in December. The goods set off as stock in trade, and the value of them, is well enough stated in that schedule, but the value of the other goods is stated in the aggregate, and the household furniture, books, and some other things are not in any way described. But this defect may not be a ground for vacating the order, and it is not material to our present inquiry.

In so far as the order of December 22d relates to the sale of the estate, the right of a creditor to be heard rests upon the same consideration. No one who is interested in the estate can be cut off from being heard by an ex parte order entered upon the application of the assignee. Justice is not administered in that way. When the matter to be passed upon has been submitted to a general meeting of creditors, and, if it has not been so submitted, if due notice has been given, an order may be given which will settle the rights of all parties, but without notice nothing can be done which will arrest investigation into the conduct of the assignee. It is true that a creditor is a party to a bankruptcy proceeding, and, as such, bound by all that is regularly done in the course of the proceedings. But confirmation of the acts of an assignee, without notice to the creditors of the estate, and without giving them an opportunity to be heard, is not regular or proper, and therefore they are not bound by it.

The power of the court to grant the relief asked was briefly discussed and perhaps seriously denied at the hearing, but there is little room for doubt on the point. Upon contested questions regularly decided, it may be that authority ends with the judgment which is given. But as to judgments by default, and all ex parte orders, the rule is otherwise. Harris v. Hardeman, 14 How. [55 U. S.] 334. In bankruptcy proceedings there are no terms of court by which authority to correct what has been done amiss can be said to be limited, and probably the court has full control for that purpose over the whole proceeding from the beginning until the end is reached.

Whether the motion to vacate the order was made in apt time is more doubtful. There is nothing of record to show when Russell was first advised of the order, unless indeed he was bound to take notice of the schedule within twenty days after it was filed. This would have brought knowledge of the facts to him early in January, and the motion was not filed until July. Such delay would be inexcusable in a case where the situation of the parties may change, and the assignee may suffer by the delay. But this is not the rule; for the assignee must file his schedule of exempt property within twenty days after the assignment to him, and if he does not do so the creditors may fairly suppose that no exemption has been claimed or made. It is only by diligence in putting in the schedule that the assignee can require the creditor to be diligent in bringing forward his objections to it. Under all the circumstances I am of the opinion that the order of December 22d ought to be set aside, and the report of the assignee of the property exempt from the operation of the act and of the sales made by him, as well as his disbursements, ought to be open to examination.

As affecting the extent of inquiry, it may be well to remark that a composition of the debts of the bankrupt has been had, under which it is understood that all of the debts have been paid excepting that of Russell, who is contesting these questions with the assignee. A portion only of the property set off to the bankrupt as exempt from the operation of the act was subjected to the levy of Russell's execution, and I suppose the discussion is to be confined to that portion. Something was said at the bar about the lien of the execution in the hands of the sheriff extending to all of the personal property, whether levied or not, but the question of lien as lately decided in this court and the circuit court, contained no feature of that kind. The demand was for payment from the fund obtained from the goods actually taken in execution, and the creditor cannot now enlarge his claim.

Referring to what was said respecting the schedule of exemptions made by the register, it may be proper to add that the report of the assignee, filed December 22d, contains a list of the property set off to the bankrupt, which will be referred to hereafter. In that list certain goods are described as "stock in trade," which were set off under the sixth subdivision of section 33

of the statute of the state (Rev. St. 380). That clause, with others, describes property which shall be exempt from execution, and reads as follows: "The tools and implements, or stock in trade, of any mechanic, miner, or other person, used and kept for the purpose of carrying on his trade or business, not exceeding two hundred dollars in value." Its meaning and effect has been considered by courts of other states, and is no longer doubtful. Grimes v. Bryne, 2 Minn. 89 (Gil. 72); Guptil v. McFee, 9 Kan. 30; Bevitt v. Crandall, 19 Wis. 581. It is applicable to miners and handicraftsmen, as distinguished from merchants and traders, and the bankrupt, as a merchant, was not entitled to its protection.

By the eighth subdivision of the statute before referred to, working animals of the value of two hundred dollars may be reserved by the debtor, and, under this clause, a horse was allowed to the bankrupt. It is contended that, being a merchant, the bankrupt could have no use for such an animal, but this is not apparent. The reservation was made by him as the head of a family, and his right to claim the property in that way is not denied. There are many ways in which a horse may be useful in supporting a family, whatever the occupation of the head of the family may be, and I cannot assume that this animal was not used for that purpose. If kept for pleasure, merely, he was not exempt. Burges v. Everett, 9 Ohio St. 425. But of this there is no evidence. Perhaps the description in the schedule is imperfect in not describing the animal as a work horse, and in not giving his value, but no complaint has been made on that ground. The buggy mentioned in the list is clearly not within the statute which specifies a farm wagon, cart, or dray. In some states it is held that the word wagon is used generically to signify every kind of vehicle with wheels, but to use the term farm wagon in the same sense would be very absurd. No other property mentioned in the schedule was taken in execution by Russell, and the inquiry on this point results in excluding from the list the "stock in trade" and buggy, which must be charged to the assignee.

As to the right of the creditor to call for an investigation into the conduct of the assignee in selling the property, no doubt is entertained. The latter has applied to be discharged from his trust, and the court is required to audit and pass his accounts. Section 5096. Any misconduct on his part in respect to the estate upon which Russell had, or now has a lien, is a proper subject for examination. But the charge of fraud is too vague and general to arrest attention. If the goods were sold for a nominal sum as stated, the value should be stated also, in order that the loss to the estate may be seen, and any agreement between the purchasers and the assignee respecting such sale should also be shown. So also, if goods were bid in for the benefit of the bankrupt and paid for out of the estate, the amounts so paid out should be stated. Every fact which is relied on to establish fraud should be distinctly stated in a way that may be controverted, and the whole should be verified by some one having knowledge of the circumstances. It is not intended that the person verifying shall testify to every fact as of his own knowledge, but that he shall exhibit such knowledge of the facts and circumstances as may afford reasonable ground to believe that the charge is made in good faith. The creditor should also give security for the costs which may be adjudged against him upon the hearing or trial of the issue. The practice in respect to an issue of this kind has not before been considered in this district, and the creditor will have leave to conform to the suggestions here made.

Objection is also made to charges for services and expenses which were mostly incurred in respect to the property on which the execution was levied. It seems that soon after the sheriff took possession of the property he was dispossessed by the marshal under process from the bankruptcy court, and thereafter the property was kept and sold by the assignee. We have recently ascertained that the creditor, by his execution and levy, secured a valid lien upon the goods, but that point was at first involved in great doubts. Conceding that, the jurisdiction of the bankruptcy court extending to the ascertainment and liquidation of the lien was clear and undeniable. In that view no reason is perceived for exempting the property from the reasonable cost of keeping and disposing of it, including the services of the assignee,—such as the rent of the building in which the goods were kept, the marshal's fees and expenses in taking charge of the goods and the like. As some of the charges may be excessive, and others unwarranted, the matter will be referred to the register to report what are properly chargeable to the goods claimed by Russell. No charge can be allowed for the services of an auctioneer, without showing that such services were necessary, and then only for a reasonable sum. The time for which the assignee was necessarily employed in caring for or disposing of the goods may be entered at a reasonable rate, which will be allowed by the court and submitted to the circuit judge for approval, pursuant to the amended general order of March last. The charge for attorney's fees stands in a different light. That charge is based upon services rendered to the assignee in his contest with Russell for the property which has been awarded to the latter. I do not find any principle upon which a litigant can be made to furnish sinews of war to his adversary, unless in case of husband and wife, where it is presumed that the wife may

have contributed to the husband's property. Aside from this the assignee was contending for the property in behalf of the general estate, which must therefore be responsible for the expenses so incurred. It would be strange indeed if the general estate could cast upon this special fund the expenses of the litigation in the same manner as if it had been successful in the contest. Surely is is enough for the creditor to pay his own attorneys.

If an issue is raised respecting the conduct of the assignee in selling the property the cause may remain until that issue shall be determined. If no such issue is to be presented it may be referred to the register to examine the assignee's report and ascertain the value of the property improperly set off to the bankrupt, and make the proper allowances for fees, disbursements, and services.