### HARRISON & Co. *v.* W. W. MITCHELL et als.

When directly after a seizure under execution of property not liable to be seized, the plaintiff in the seizure disavows the act of the officer, no action will lie against him for damages; but when no disapprobation of the conduct of the officer is manifested, and the plaintiff permits the property seized to remain under seizure for his benefit, he is to be considered a co-trespasser with the officer by whom the illegal seizure was made.

The implements by which the business of a commercial firm is carried on are not legally subject to seizure.

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J.
J. A. *Rozier*, for plaintiff. T. & A. *McDonald*, for defendants and appellants.

COLE, J. *Howard & Hall* obtained a judgment against *Mr.* and *Mrs. W. H. Harrison* for $25 75; an execution issued and the deputy constable *J. T. Hurst* seized a desk and iron safe as the property of said *W. H. Harrison* to satisfy the judgment.

They were not sold, but are now in the constable's warehouse.

*Moses B. Harrison*, a brother of *W. H. Harrison*, institutes this suit and claims two hundred dollars, the value of the safe and desk, and one thousand dollars damages for injury done to his credit and the inconvenience he was subjected to in being deprived of their use and being obliged to purchase others.

Defendant alleges that *Moses B. Harrison* is a fictitious personage created for the purposes of this action. The cause was tried before a jury, who rendered a verdict for $365 in solido against the defendants, and they have appealed from the judgment thereon. The Judge of the lower court overruled the application for a new trial, because he thought the defendants should be left to their legal remedy of appeal, but he states that he disapproved of the verdict of the jury and thought there was sufficient evidence to show simulation and..collusion between the two *Harrisons,* and that the office furniture was liable for the debt, because *W. H. Harrison* was, as the court believed, no longer in business.

A question has been raised as to the right of plaintiff to hold *Howard & Hall* responsible for the acts of the constable. We are of opinion that if *Howard & Hall,* directly after the seizure, had disavowed the act of the officer, then no action could lie against them in the event the constable had committed any illegal act, for they had the right to presume that the constable would have done his duty and have only executed the *fi. fa.* on property designated by law; but as they did not by their actions manifest any disapprobation of the conduct of the constable, and as they permitted him to hold the furniture for their benefit, they must be considered to have endorsed the action of the officer and to have thus rendered themselves co-trespassers with him in the event the action of the constable is decided to have been illegal.

We think, the evidence establishes the existence of plaintiff; we are satisfied, however, that the sale of the safe and other office furniture to plaintiff is simulated and that it is the property of *W. H. Harrison* and *Carter Harrison,* constituting the firm of *Harrison & Brother,* now in liquidation, and that the sale was made to protect them against a supposed liability for the debts of *W. H. Harrison;* they were not, however, legally subject to seizure, if they were the implements by which the firm carried on its business.

An examination of the record renders the simulation transparent. *Howard & Hall* obtained their judgment on the last day of February, 1856; the citation had been served the 24th January previous; notice of judgment was given March 1st, 1856, and the seizure was made on the 8th of the same month.

The furniture was in the office No. 37, Natchez street, where plaintiff pretends to carry on business, and on the 27th February, 1856, two days before the rendition of the judgment, *Harrison & Brother,* by authentic act before *A. Abat,* Notary, sell to plaintiff, their brother, for $229 cash, all the furniture in said office, and delivery was acknowledged since the 1st November, 1855.

*Hurst,* a witness, testifies, that at the moment of seizure of the safe and desk, *W. H. Harrison* told him, that they did not belong to him, as he had made a sale of them to his brother, "in consequence of having been greatly troubled by his creditors."

It also appears that plaintiff carried on business under the name and style of *Harrison & Co.,* although he pretends to have been the sole partner; and *J. S. Barton* testifies, that "*W. H. Harrison* appeared ostensibly to be a member of the firm, and was so looked upon in the community," and *Samuel Henderson* declares, that he always presumed that "*W. H. Harrison & Brother* was the same as *Harrison & Co.,* as *W. H. Harrison* spoke to me in the same way whenever I went there, as he used to do when it was *Harrison & Brother; Chapman* swears, that "he has seen *W. H. Harrison* at No. 37 Natchez street, conducting business there. The only man he knew there was *W. H. Harrison;*" *J. S. Brown* testifies, that on the 12th July, 1856, *W. H. Harrison* asked him to loan him $50 00;

witness asked him to whose order he should draw the check; he replied to the order of *Harrison & Co.*

If plaintiff, under the style of *Harrison & Co.* constituted a different firm from *W. H. Harrison & Brother*, it would have been easy to have established it; but plaintiff has failed to show it by satisfactory evidence. We think, that the old firm of *W. H. Harrison & Brother* never ceased to exist, but only changed its name, that the furniture seized belongs to it, and that plaintiff has no interest in the property, and therefore, cannot stand in judgment in this suit.

It is, therefore, ordered, adjudged and decreed, that the verdict of the jury and the judgment of the court be avoided and reversed, and that the petition and demand of plaintiff be dismissed, and that plaintiff pay the costs of both courts.