## Case No. 18,148.

### In re YOUNG et al.

[3 N. B. R. 440 (Quarto, 111).] [1]

District Court, E. D. Missouri. 1869.

BANKRUPT—EXEMPTION OUT OF FIRM ASSETS.

Where the assignee had allowed the two members of a bankrupt firm an exemption, under the laws of Missouri, of one hundred and fifty dollars each, out of partnership assets, there being no individual assets, the register disallowed the same, and on application of the bankrupt's attorney, certified facts for opinion of the court. *Held*, the bankrupts were entitled to the exemption out of partnership assets.

[Cited in Re Rupp, Case No. 12,141; Re Parks, Id. 10,765; Re Blodgett, Id. 1,555; Re Boothroyd, Id. 1,652; Re Handlin, Id. 6,018; Re Corbett, Id. 3,220.]

[In the matter of Bernard F. Young and John M. Young, bankrupts.]

By LUCIEN EATON, Register:

"At the request of George W. Lubke, Esq., attorney in this matter for John M. Young, I make the following statement of facts: At the second meeting the assignee presented his accounts for audit. In them I found two items of one hundred and fifty dollars each to his credit, thus: By cash exempted to B. F. Young, $150. By cash exempted to John M. Young, $150. The assignee's papers showing no assets from any source other than the partnership property, which will fall far short of the amount of the partnership debts proved, I was of opinion that money derived from partnership assets was not subject to exemption for the benefit of the separate members of the firm. Therefore, I disallowed the items. No exception was taken by the assignee or the bankrupts. John M. Young had previously presented to me a check for the sum exempted, which I declined to countersign, and told him I thought it could not be allowed. I also told him it would come up at the meeting. He did not attend, I think. The meeting was held November 20th, 1869, and the schedules of exempted property were filed

the same day. They contain these items as 'exempted under the provisions of sections 12, 13, c. 63, Rev. St. Mo.' No creditor opposed or objected to the exemption, and the disallowance of the items was of my own motion. My views are as indicated. No statutes of Missouri exempt the joint property of the firm from execution for debts of the firm. There can be no individual property, properly speaking, in partnership assets, until partnership debts are paid, and the interest of the copartners in the residue ascertained. Here there is no residue. The partnership debts will never be paid in full, and no occasion to adjust the rights of the several partners inter se will ever arise. If I am in error in my view of the law, I think the mistake can still probably be corrected."

Hitchcock & Lubke, for bankrupts.

## Case No. 18,149.

### In re YOUNG.

[15 N. B. R. 205; [1] 1 Tex. Law J. 7.]

District Court, W. D. Texas. Dec. 11, 1876.

BANKRUPT—EXEMPTION OF RURAL HOMESTEAD.

If a bankrupt, under the laws of Texas, acquires a right to a rural homestead, the subsequent extension of the limits of a city so as to embrace a part thereof does not affect his right.

I, S. T. Newton, one of the registers of said district in bankruptcy, do hereby certify that in the course of proceedings before me in said matter the following question arose pertinent thereto, which, at the request of E. C. McClure and J. H. Carleton, Esquires, attorneys for said bankrupt, and George W. Chilton and Horace Chilton, Esquires, attorneys for W. G. Cain, assignee, are respectfully certified to the court. On the 12th day of June, A. D. 1875, W. C. Young, bankrupt aforesaid, filed his petition in voluntary

---

[1] [Reprinted by permission.]

[1] [Reprinted from 15 N. B. R. 205, by permission.]

bankruptcy, and was adjudged a bankrupt, and on the 3d day of July next thereafter, W. G. Cain, Esquire, of the city of Tyler, in said district, was duly elected assignee of said bankrupt estate. On the 3d day of September, A. D. 1875, the said assignee, in accordance with section 5045, Rev. St., reported to the register his certificate of exempted · property, which was filed and recorded in said court, and on the 3d day of February, 1876, the said bankrupt, by his attorneys, filed his exceptions to said report, alleging that a portion of the real estate which constituted his homestead was not embraced in the assignee's certificate of exemptions, but was claimed by him as assets belonging to the estate of said bankrupt. In due course of the proceedings in said matter, I caused the exceptions, pursuant to rule 19, general orders in bankruptcy, to be argued before me, and at the hearing thereof I examined as witnesses touching said matter, W. W. Johnson, Samuel Wilson, E. H. McClure, and W. C. Young, bankrupt, whose depositions are herewith filed, together with other documentary evidence offered by said bankrupt in support of his exemptions filed herewith, and made a part of his certificate.

The testimony of the bankrupt shows that in January, A. D. 1867, being then a married man and head of a family, he purchased of one Abraham Hart, in the county of Dallas, in said district and state of Texas, a tract of land containing twenty-nine acres, but acquired title to only thirteen and one-half; that at the time of the purchase of said tract of land, it was situated in the county of Dallas, being mostly a cedar brake, and remote some five or six hundred yards distant from any other settlement or improvement, and from the then town of Dallas. That he paid two hundred and fifty dollars for the tract and went immediately into the possession, and commenced building and improving the same, and destined it then as his homestead.

The testimony of the bankrupt further shows, and he is in this corroborated by the testimony of the other witnesses, that he has continued ever since in the possession of said tract, residing upon, cultivating, using, paying taxes on and claiming it as his homestead, never at any time having shown or evidenced an intention to abandon it, or to exchange it for other property for similar purposes. By reference to the map filed herewith, it will be seen that the tract of land claimed by said bankrupt as his homestead is designated by a black line drawn in pencil, and the same which is described in his Schedule B, No. 5, containing, as appears from his testimony, twelve acres.

It is further shown in evidence that at the time of the original purchase of said tract and destination as a homestead, it was a country site, and not within the corporate limits of the town of Dallas, and so remained out of the corporate limits of said town until within the year A. D. 1873, when the corporate limits of said town were extended, pursuant to and authorized by an act of the legislature of the state of Texas, passed 20th of April, A. D. 1871 (see Sp. Laws 12th Leg. 2d Sess. A. D. 1871, p. 156), so as to embrace within its limits the said tract and residence of said bankrupt, when plots were made and streets laid off running and crossing portions of said tract and premises of said bankrupt, against his protests and without the consent of said bankrupt or that of his wife. The exemptions reported by said assignee, though not marked by any definite line, a certified copy of which is hereto attached marked "Exhibit J," includes by calculation about three acres, being that part of the tract claimed and described in bankrupt's Schedule No. 5, upon which said bankrupt has his dwelling house, cow lots, and some parts in cultivation.

The testimony further shows that said · bankrupt has at different times since his first purchase bought some other fractional part of lots lying contiguous to and adjoining the land he first purchased, and has sold also since small fractional parts of his first purchase; these fractional lots purchased by him were intended to form a part of his homestead, the whole making the twelve acres claimed, and at no time exceeding in value twenty-five hundred dollars.

From the foregoing statement of the case, the question of law raised by the exceptions will appear: Whether the bankrupt at the time of his adjudication in bankruptcy was entitled to have set apart to him the entire lot of land claimed and described in his said Schedule B, No. 5, or did that portion, not exempted by the said assignee, pass by the deed of assignment to said assignee for the benefit of creditors?

By S. T. NEWTON, Register in Bankruptcy:

The 14th section of the bankrupt act of the 2d of March, A. D. 1867 [14 Stat. 522], excepts from the operation of the assignment of a bankrupt's estate his necessary household and kitchen furniture, and such of his other articles and necessaries, not exceeding in value in any case five hundred dollars, as shall be designated and set apart by the assignee, having reference in amount to the bankrupt's family, conditions, and circumstances; also his wearing apparel, and that of his wife and children, and his uniform, arms, and equipments, if he is or has been a soldier in the militia or service of the United States, and such other property not included in the foregoing exceptions as is exempted by the laws of the state in which he is domiciled, to an amount not exceeding that allowed by such state exemption laws in force in the year 1864, and "in no case shall the property hereby exempted pass to the assignee, or the title of the bankrupt thereto be impaired or affected by any of the provisions of this act." By an amendatory act passed on the 8th of June,

1872 [17 Stat. 334], this provision was changed so as to give the benefit of exemptions under state laws in force in 1871.

The courts of the United States, having recognized as a rule the interpretation given by the state courts to the exemption laws in force in the several states of the Union, we must then look to the constitution of our own state and laws in force passed pursuant thereto. The 15th section of article 12 of the constitution of 1869, of the state of Texas, reads as follows: "The legislature shall have power and it shall be their duty to protect by law from forced sale a certain portion of the property of all heads of families; the homestead of a family, not to exceed two hundred acres of land, not included in a city, town, or village, or any city, town, or village lot or lots, not to exceed five thousand dollars in value at their destination as a homestead, and without reference to the value of any improvement thereon, shall not be subject to forced sale for debts." The laws of Texas provide that there shall be reserved to every citizen, head of a family, or householder, citizen of the state, a homestead, as in the constitution of 1869, from forced sale, of the value of five thousand dollars at the time of destination as such homestead, nor shall the subsequent increase in the value of the homestead by reason of improvement or otherwise subject the same to forced sale.

It is shown by the evidence of the witnesses that the bankrupt is a man of limited means, with a wife and children dependent upon his own exertions and labor for their support and maintenance, and as such is entitled to the beneficent provisions intended by the framers of our constitution for the head of families, unless it is shown that he has by some act of his own forfeited his claim to them. It could not, I think, be contended for a moment with any show or reason but that the tract of land occupied. claimed, and continuously used by said bankrupt and his family from the time of the purchase and destination as his homestead in January, A. D. 1867, until his adjudication in bankruptcy was a rural homestead, being within the constitutional limit. both as to quantity and value, and as such free and exempt from forced sale under the laws of the state. it not being shown that he owned or possessed any other real estate. The only material question then which it seems necessary to mention in determining the rights of the parties in this matter is, whether the extension of the corporate limits of the city of Dallas, so as to embrace the premises occupied and used by said bankrupt at the time of his adjudication, and the laying off and running of streets crossing said premises, changed it from a rural to an urban homestead, and divests the said bankrupt of his previously acquired and vested rights.

It is contended by counsel for the assignee, in support of his report of exemptions, that the extension of the corporate limits of the city had this effect, and he refers to the case of Taylor v. Boulware, 17 Tex. 78, to sustain his position, in which the court say: "We are not disposed to question the power of the legislature to extend the limits of a town, nor to question that after the plat or plan of the town shall have been extended corresponding with its boundaries so authorized to be extended, a homestead so falling within such extension, though acquired before it was done, would work a change in the character of the homestead from a country to a town homestead, and subject necessarily to the value limitation placed upon a city homestead by the constitution." The doctrine here laid down would seem to some extent to favor the position assumed by counsel; but I think the reasoning of the court in the latter part of the same case will bear a different and more liberal interpretation, in which they say: "The protection of the homestead from forced sale was manifestly a favorite object with the convention, and the constitutional provision intended to secure that object has been regarded as entitled to liberal construction. The term lot or lots used in the constitution must be taken and construed in the popular sense of those terms; and when so used, never would be considered as embracing lands within the jurisdictional limits of the corporation not connected with the plan of the city. It might be important to the administration of the police laws of the corporation that such lands and those who owned them should be within its jurisdiction, but until streets had been extended through the land connecting it with the plan of the town, the land could not be called a lot of town."

In the case of Hancock v. Morgan, 17 Tex. 582, the court say: "The limitation of the homestead in a town or city is not to the number, but to the value of the lots. It is not required that the lots shall join, or be contiguous to each other; all that is required to entitle the property to exemption from forced sale is that it shall be used for the convenience or uses of the head or members of the family."

In the case of Bassett v. Messner, 30 Tex. 604. which is a case more in point, the facts were that Messner. in the year 1854, bought thirty-five and forty-five hundredths acres of land adjoining what was then the village of Brenham, for the sum of three thousand five hundred dollars; that he entered immediately into possession. and with his family occupied it as his homestead until his death, and that his surviving wife and children continued to occupy the premises. That the village of Brenham at that time embraced one hundred acres of land, which was laid off by the county authorities of Washington into streets, lots, and blocks. In the year 1858. the village of Brenham was incorporated as a town in accordance with the provisions of an act of the legislature, on the 27th of January, 1858. By this act of incorporation the limits of the town were extended to one mile. having the courthouse of the county for its center. By this

extension of the original limits of the village, the town boundaries took in the land of Messner. The question raised in this case is the same that is presented in the case in the present matter, as to the effect of the extension of the limits of the town by the act of incorporation upon a rural homestead lying contiguous to a village, and used and enjoyed as a homestead at the time it was incorporated within the extended limits of the town, and as to the liability of such homestead to the claims of creditors.

Upon this state of facts the court say: "By direct act of legislation, the legislature of this nor of any other state, acknowledging the restraint of constitutional obligation, forbidding the disturbance of vested private rights, would undertake to declare as homestead, anywhere in the country, an incorporated town or city without the consent of the owner, and subject it to special taxation and burdens, in addition to the common charge incident to all property of the state, for the fiscal purposes of the government. What it would not, and we may say could not do directly without violating a cardinal principle of the government, it should not do by indirect legislation."

In the case of Nolan v. Reed, 38 Tex. 425, where the same question is discussed, the court say: "We conclude that the legislature itself could not work this metamorphosis of a rural into a suburban homestead without the consent of these peculiar words of construction; much less could the local corporation do so, and certainly we do not feel inclined by any judicial interpretation to achieve a result so repugnant to the letter and spirit of our domestic constitution."

I have been referred by counsel for the assignee to the case of Iken v. Olenick, 42 Tex. 195, as overruling the principle laid down in these cases, but I find upon examination of that case that the facts are dissimilar and do not in my opinion have any application to the question here presented.

I find upon reference to similar statutes in other states, where the same questions have been examined by the courts, they hold the same views. In 12 Iowa, 518, the court say: "The homestead right having once attached, it cannot be taken away without the consent of the owner." The courts of California hold the same doctrine. See 16 Cal. 184.

In the case now under consideration, the evidence shows that the tract of land claimed by said bankrupt lies in one body, and has been continuously occupied and used by him and his family for homestead purposes; that the streets which were laid off and running across his premises have never been opened, and that the value of the lot or tract of land owned by said bankrupt has at no time, including improvements, exceeded the constitutional limitation of five thousand dollars.

In view of the facts as proven, and the authorities cited, I think the exceptions in said matter by said bankrupt to the certificate of the assignee were properly taken, and that the property claimed by said bankrupt, as described in his schedule, should have been set apart to him, being protected and shielded by the constitution and laws of the state from forced sale and claims of his creditors.

DUVAL, District Judge. An examination of the facts in the case and law applicable to them satisfies me that Mr. Register Newton is correct in his decision. The bankrupt having acquired a rural homestead in accordance with the constitution and laws of the state of Texas has a vested right therein. The fact that the land embracing such homestead was subsequently included within the limits of the city of Dallas by an act of the legislature authorizing their extension cannot affect his homestead rights. The cases cited by the register, decided by supreme court of the state of Texas, appear to me conclusive on this point. The opinion of the register is, therefore, in all respects approved and confirmed, and the clerk will so certify.