## Case No. 12,380.

### In re SAUTHOFF et al.

[8 Biss. 35; [1] 16 N. B. R. 181; 5 Cent. Law J. 364.]

District Court, W. D. Wisconsin. Aug., 1877.

BANKRUPTCY—PARTNERSHIP—DISSOLUTION—FIRM DEBTS—FIRM ASSETS CONVERTED INTO HOMESTEAD—ESTOPPEL.

1. A partner withdrawing firm assets, upon dissolution. as his interest in the partnership, takes them subject to the rights of the firm creditors, if the fund remaining is insufficient for the

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

payment of their debts. This is true even though no fraud is intended, and the partners believed the remaining assets to be ample.

[Cited in Brecher v. Fox, 1 Fed. 274.]

2. If the retiring partner invest the assets thus withdrawn by him, in a homestead, a court of equity will compel its surrender for the benefit of the creditors.

[Cited in Re Corbett, Case No. 3,220.]

3. Subsequent dealings of the creditors, with the remaining partner, and sales and credits by them do not estop them from enforcing their claim against the assets withdrawn.

In bankruptcy. The facts in this case were as follows: Sauthoff and Olson were copartners, doing business at Madison, Wisconsin, as dealers in clothing. The copartnership was formed in 1865, and the parties continued in business until January 27, 1876, when Sauthoff purchased from Olson his interest in the business, and the firm was dissolved. From the testimony it appeared that there was about the same quantity of goods in the store at the time of the dissolution as at the time of bankruptcy. The outstanding accounts due the firm at the time of dissolution, on their face, amounted to about ten thousand dollars. Their liabilities then due, and to become due, were a little over nine thousand dollars, of which amount about six thousand dollars remained unpaid when the petition in bankruptcy was filed. By the terms of dissolution, Sauthoff was to pay Olson for his interest in the property and business six thousand five hundred dollars, and the transaction was consummated by the payment to Olson in cash of one thousand dollars, the execution by Sauthoff to Olson of two notes, one for one thousand dollars, and the other for one thousand eight hundred and fifty dollars, and by the further delivery to Olson of a portion of the book accounts of the firm, such portion so delivered amounting to two thousand six hundred and fifty dollars on their face. Sauthoff assumed the firm debts and continued the business, making some additional purchases of goods, and incurring new liabilities therefor. In April, 1876, but little more than two months subsequent to the dissolution, Sauthoff was unable to meet his liabilities, which included such as remained unpaid of the late firm, and sought a compromise with his creditors, offering them thirty cents on the dollar. Subsequently, and within a short time, bankruptcy proceedings were commenced against Sauthoff & Olson. Previously, and in March, 1876, Olson had purchased a homestead. He had also collected about one thousand four hundred dollars in money from the outstanding accounts turned out to him by Sauthoff at the time of the dissolution of the firm. A portion of this money, together with the one thousand dollars which Sauthoff had paid him in cash, was used by him in partial payment of the purchase price of the homestead. The remainder of the accounts in his hands, uncollected, and amounting to about one thousand two hundred and fifty dollars, he, subsequent to the bankruptcy, on demand, delivered to the assignee. The stock in trade in the hands of Sauthoff, at the time of the bankruptcy, was subsequently sold by the assignee for about eight thousand two hundred dollars. From the accounts and demands which came to the assignee he collected about one thousand four hundred dollars. The assignee, in behalf of creditors, by the present proceeding seeks to reach the one thousand dollars paid in cash at the time of the dissolution by Sauthoff to Olson, and also the sum of one thousand four hundred dollars collected by Olson upon the book accounts, which he took on the transfer of his interest to Sauthoff, and to charge the homestead property of Olson, acquired as before stated, with the payment of so much of these amounts as were expended in the purchase of that property, it being claimed on the part of the assignee that the dissolution of the copartnership and the payment by Sauthoff to Olson of the one thousand dollars, and the delivery to the latter of a portion of the book accounts of the firm, operated as a fraud upon creditors, and that Olson should restore to them what he thus received. No payment had been made to Olson by Sauthoff upon the notes for two thousand eight hundred and fifty dollars, given upon the termination of the copartnership.

[For prior proceedings in this litigation, see Case No. 12,379.]

H. M. & H. A. Lewis, for assignee.
Vilas & Bryant, for bankrupt Olson.

DYER, District Judge. In a case where a copartnership which is indebted has been dissolved, the retiring partner withdrawing, on transfer of his interests, a portion of the assets or capital, and the transaction being followed at a not remote period by the insolvency of the member assuming the debts and continuing the business, it is the duty of the court, when called to consider the rights and liabilities of the parties, to look cautiously into the facts, with a view to the discovery of any possible fraud, and the correction of any wrong that may have resulted to creditors.

The principle is elementary that in equity, partnership creditors have an absolute priority of claim upon the partnership property for the payment of their demands, and that the interest of each individual partner is his share of the surplus after payment of the partnership debts. To such an extent has this rule been carried, that it has been held that where a partner sells his interest to a stranger, or it is sold upon execution against him, his right to have the partnership debts paid, and his liability therefor discharged out of the property, are not divested by the sale, and that such a sale gives to the purchaser only such an interest in the assets as may remain after the payment of partnership debts. Menagh v. Whitewell, 52 N. Y. 146; Osborn v. McBride [Case No. 10,593]. The sale of partnership property by one of a firm of

commercial partners on the eve of his insolvency will be set aside. Saloy v. Albrecht, 17 La. Ann. 75.

The appropriation by an insolvent firm of partnership property to the payment of the individual debts of one partner is not simply void, but is fraudulent, and avoids the deed of assignment. Wilson v. Robertson, 21 N. Y. 587.

Admitting the full force of these principles, it is also true that they are not so enforced as to operate against or affect a dissolution of copartnership made in good faith, and which is unaccompanied by any improper withdrawal of assets beyond the reach of creditors.

"The right of copartners upon dissolution to transfer the joint property to one of the firm is clear and unquestionable. The effect of such a transfer as between the partners, is to vest the legal title to the property in the individual partner, with a right to use and dispose of it as his separate estate. * * * If in such transfer there is no fraud and collusion between the copartners, for the purpose of defeating the rights of the joint creditors, and the transaction is made in good faith upon dissolution, and for the purpose of closing the affairs of the partnership, the joint property thereby becomes separate estate, with all the rights and incidents, both in law and equity, which properly attach thereto." Howe v. Lawrence, 9 Cush. 555.

These are principles applicable to a case where one partner retires and the other takes the entire property and assets; and they are substantially reiterated in Sage v. Chollar, 21 Barb. 596, and in Waterman v. Hunt, 2 R. I. 298. See, also, Dimon v. Hazard, 32 N. Y. 65. Where, however, the circumstances of the case show that the dissolution of the partnership is a fraud, as if it be an incident to a scheme for giving one creditor a preference, or for enabling a member of the firm wrongfully to appropriate assets which should be applied in payment of partnership debts, or where the conversion of joint into separate assets is a result contemplated, and is the motive, or one of the motives of the act of dissolving the firm, the act may be avoided by the joint creditors. In re Waite [Case No. 17.044].

The correctness of the ruling in In re Boothroyd [Id. 1.652], cannot be questioned, namely: "That the purchase by an insolvent trader of a homestead upon the eve of bankruptcy with knowledge of his insolvent condition and for the purpose of placing the property beyond the reach of process, is a legal fraud, which no court should hesitate to hold void as to creditors." Advancing a step further, where a copartnership is insolvent, or is possessed of assets not more than adequate for the payment of debts, one member of the firm cannot, upon retiring, rightfully withdraw beyond the reach of creditors and to their injury a portion of the assets or property, and make a personal appropriation of those assets by putting them in the shape of a homestead.

Under such circumstances, though it takes the form of a homestead, the property is as much within the reach of a court of equity as before; and no such change in its form or character can give it new sacredness or endow its possessor with new privileges in its ownership or use.

Keeping in view the principles thus stated, the question now is, whether upon the facts, the transaction between Sauthoff & Olson is one which must be condemned as a fraud in fact or law upon their creditors.

Without referring in detail to the circumstances bearing upon the point, it may be first stated, that the evidence does not show that there was any actual intended fraud in the act of dissolution. Although the interest of the retiring partner, based upon the estimated value of their assets, was greatly exaggerated, I think the intent of the parties in dissolving their business relations, as disclosed by the testimony, was honest, and that positive bad faith is not to be imputed.

Admitting this to be true, the question still remains, whether their actual pecuniary condition was such as to justify the withdrawal by Olson of the assets which were taken by him when the partnership was dissolved. The amount so withdrawn was two thousand four hundred dollars. He took two thousand six hundred and fifty dollars in book accounts. Of these he collected one thousand four hundred dollars, and returned the balance to the assignee. It is true that the one thousand dollars paid him in cash by Sauthoff was then raised by loan or pledge, as collateral security, of a mortgage on Sauthoff's homestead, held by his brother. But, subsequently, the holder of that mortgage as such security, having obtained judgment against Sauthoff for the one thousand dollars, it was held by this court that Sauthoff's brother, as the assignor of the mortgage, stood in the position of a surety, and was entitled as such to protection; and there having been an execution levy under the judgment upon Sauthoff's stock, it was ordered that the one thousand dollars be paid in full from the general fund; so that ultimately it came from the assets of the concern and to that extent in fact diminished them. Now, the question is, keeping in view the rights of creditors, was the actual pecuniary condition of this firm such as to entitle the retiring partner to appropriate the amount of their assets which he in fact received, and to place them in the form of exempt property?

In settling this question, the principle we must apply is, that if a retiring partner takes out a portion of the assets of the firm for his individual use, he must do so without impairing the fund to which the creditors have the right in equity to look for payment; and it must be made clearly to appear that such remaining fund is ample. If such partner receives more than his interest in the surplus

after payment of the firm indebtedness, equity must treat it as a wrong to creditors, and this equity cannot be avoided by the fact that the partners believed that enough remained to pay the partnership debts, if, in fact, after making such appropriation in favor of one or both partners, the remaining assets prove insufficient.

The results to be reached one way or the other in this case, depend, of course, upon what shall be the determination as to the sufficiency of the assets of the firm left by Olson for the payment of the partnership debts. On their face, the book accounts of the firm amounted to between nine thousand and ten thousand dollars, and this was the value placed upon them by the parties. But that they erred greatly in judgment is demonstrated by the fact that only about two thousand eight hundred dollars of the accounts have thus far proved of any value, and of this amount the assignee has received about one thousand four hundred dollars, the bankrupt Olson retaining the balance. What further moneys may be derived from such of the accounts as are uncollected is not now known.

Concerning the value of the stock of goods of which the parties were possessed at the time of the dissolution, it is quite impossible upon the present testimony to arrive at a satisfactory conclusion. Complications in this connection arise, because of the fact that no distinction has been preserved in the bankruptcy proceedings between the debts of the firm and those incurred by Sauthoff subsequently to the dissolution. Goods purchased by Sauthoff on his individual credit were mingled with the original stock, debts were paid by him from the common fund, without regard to those contracted by the firm and those contracted by himself; the sale made by the assignee included goods on hand at the dissolution and those purchased subsequently, and, so far as distribution has been made, no distinction has been observed between the firm creditors and the subsequent individual creditors of Sauthoff.

Of course, no part of the moneys which it may be determined Olson should restore can rightfully be used in the payment of individual liabilities incurred by Sauthoff subsequently to the dissolution. And in view of the necessity of ascertaining with accurracy the value of the assets of Sauthoff and Olson at the time the copartnership was dissolved, I shall direct a further reference to take testimony upon that question. Having settled the principles upon which the rights of the parties are to be determined, upon the coming in of that testimony it can be ascertained what amount, if any, should be restored to the fund by Olson for application upon the partnership indebtedness.

It has been urged by counsel for respondent, that, by their course of dealing with Sauthoff, selling him goods, giving him fresh credit and permitting such goods to be mingled with the old stock, the creditors must he held

to have ratified the transaction between Sauthoff and Olson, and are now estopped from asserting a claim upon the property withdrawn by the latter from the assets of the firm. But it cannot be claimed that the action of the creditors operated to release Olson from liability for the firm indebtedness, and I fail to see how their subsequent dealing with Sauthoff so far sanctioned the appropriation by Olson of the moneys he took out of the firm as now to deprive them, if it shall be found that the remaining assets were insufficient to pay their debts in full, of the right to follow those moneys.

The present order will be, that the case be referred to the register to take testimony and ascertain what was the fair actual value of the assets of the firm of Sauthoff & Olson at the time of the dissolution of that firm, the value of the stock in trade, fixtures and accounts to be separately stated; also, to ascertain what proportion of the stock of goods sold by the assignee was held by the firm at the time of dissolution, and what was the amount and value of the goods purchased by Sauthoff on his individual account subsequent to the dissolution.