## In re CAMP et al.

### (District Court, N. D. Georgia. February 9, 1899.)

1. BANKRUPTCY—EXEMPTIONS—SETTING APART BY TRUSTEE.
   Under Bankruptcy Act 1898, § 47, it is the duty of the trustee to set apart the bankrupt's exemptions as soon as practicable after his appointment, without waiting until such exemptions shall have been allowed and set apart by state officers, according to the procedure prescribed by the laws of the state.

2. SAME—PARTNERSHIP ASSETS.
   In Georgia, in case of the bankruptcy of a firm, a partner who has no individual property is entitled to exemptions out of the partnership assets, provided he has an interest in such assets to the amount and extent of the exemption claimed, although the firm property is not sufficient to pay the firm debts.

3. SAME—FOLLOWING STATE DECISIONS.
   On the question of the right of a partner to have set apart to him, out of the partnership assets, the exemptions allowed by the law of the state, the federal court, sitting in bankruptcy, will follow the rule settled and established by the decisions of the supreme court of the state.

4. SAME—JURISDICTION OF EXEMPT PROPERTY.
   When the bankrupt's exemptions have been set apart by the trustee, and his action thereon approved by the bankruptcy court, that court has no further control over the exempt property, and will not retain jurisdiction over it for the purpose of enforcing the rights of a creditor holding a note in which the bankrupt has waived his rights of homestead and exemption.

In Bankruptcy. On exceptions to ruling of referee in the bankruptcy of H. A. & B. T. Camp.

Alex. & Victor Smith and Maddox & Terrell, for petitioning creditors.

H. A. Hall, for bankrupts.

NEWMAN, District Judge. The trustee in this case set apart to B. T. Camp, one of the above-named bankrupt firm, out of the partnership personal property, certain articles valued at the amount allowed by the state exemption laws as his exemption under the provisions of the bankrupt law. This action was approved by the referee. Exceptions were filed to the action of the referee, and the matter is brought before the district court for determination. Several questions are involved, and must be determined before a proper disposition of this matter can be reached.

The first question is as to whether the exemption allowed by section 6 of the bankrupt act is to be set apart by the trustee originally, or whether it must have been first set apart, in this state at least, in accordance with the provisions of the state law, by the ordinary of the county. While this question might be one of some difficulty under section 6 of the bankrupt act, which provides that "this act

shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force," etc., and while there might be reason to argue, under this provision, that the exemption must have become such under and by virtue of the state law, and after conforming to the procedure required by the state law, under a subsequent provision of the act I think this matter is relieved of all difficulty. Under section 47, cl. 2, in reference to the duties of trustees, it is provided that one of their duties shall be to "set apart the bankrupt's exemption and report the items and estimated value thereof to the court as soon as practicable after their appointment." This language, as well as the language of rule 17 and form 47, as to the trustee's report of exempted property, indicates quite clearly that, without reference to any prior allowance of exemption by state officials, it is the duty of the trustee to set apart the bankrupt's exemption. This must be done, of course, in accordance with the exemptions allowed by the law of the state in which the bankrupt has his domicile. According to the decisions of the supreme court of Georgia, property exempted in bankruptcy has a very different status from that of property set apart and allowed by the ordinary of the county as a homestead. In the former case—that of exemption in bankruptcy—the bankrupt gets an absolute title. He may immediately sell it, or he may, according to its character, mortgage or pledge it. On the other hand, the title to a homestead, under the state law, is in the head of the family for the benefit of the family. His title is nominal during the existence of the family, the beneficial interest being in it; so that there is very little reason, in Georgia especially, for any action of the state officials when the title vests absolutely in the bankrupt by virtue of the exemption in the bankruptcy proceeding. But the language of the bankrupt act above quoted with reference to the duties of the trustee, as well as the rule and form referred to, so plainly determine this matter, in my judgment, that a further discussion of it is unnecessary.

The next question is as to the right of one partner to have an exemption out of the partnership assets. The partner asking for the exemption in this case has no individual property. It further appears that the partnership assets are wholly insufficient to pay the partnership debts. So that, if the partner is allowed this exemption, he takes it as against the partnership creditors, and thereby reduces the dividend which they will obtain on their debts by the amount allowed him as an exemption. This question is one of much difficulty. Under the bankrupt law of 1867, the courts were divided. In favor of the proposition that one partner may have an exemption out of the partnership assets, see In re Young, 30 Fed. Cas. 835 (No. 18,148); In re Rupp, 21 Fed. Cas. 15 (No. 12,141); In re Richardson, 20 Fed. Cas. 697 (No. 11,776). Against the right, see In re Price, 19 Fed. Cas. 1314 (No. 11,410); In re Handlin, 11 Fed. Cas. 421 (No. 6,018); In re Hafer, 11 Fed. Cas. 152 (No. 5,896); In re Tonne, 24 Fed. Cas. 51 (No. 14,095); In re Croft, 6 Fed. Cas. 838 (No. 3,404); In re Corbett, 6 Fed. Cas. 528 (No. 3,220); In re Sauthoff, 21 Fed. Cas. 542 (No. 12,380). For decisions of the supreme court of states other than Georgia, in favor of an individual exemption out of firm property,

see Stewart v. Brown, 37 N. Y. 350; Newton v. Howe, 29 Wis. 531;
Worman v. Giddey, 30 Mich. 151; Burns v. Harris, 67 N. C. 140;
Bank v. Franklin, 1 La. Ann. 393; Harrison v. Mitchell, 13 La. Ann.
260; Russell v. McLennon, 39 Wis. 570. Contra: Pond v. Kimball,
101 Mass. 105; Guptil v. McFee, 9 Kan. 35; Wright v. Pratt, 31
Wis. 99; Kingsley v. Kingsley, 39 Cal. 665; Gaylord v. Imhoff, 26
Ohio St. 317; Rhodes v. Williams, 12 Nev. 20; Hewitt v. Rankin, 41
Iowa, 35.

One of the clearest statements in favor of the right to such exemp-
tion is found in the case of Stewart v. Brown, 37 N. Y. 350, as fol-
lows:

"The argument submitted for the appellant is ingenious, but its fallacy is
apparent in view of the conclusions to which it tends. If it proves anything,
it is that the property of a firm is not owned by the persons who compose it,
either collectively or otherwise. It certainly does not belong to any one else,
and, if the appellant is right, the title is in a state of abeyance. If the
partners have such an ownership as subjects the property to seizure on exe-
cution, they have also such an ownership as entitles them to claim its
exemption, in a case plainly falling within the terms and intent of the
statute. In the instance before us, the complaint alleges, and the answer
admits, that the horses and harness in question were the property of the
plaintiffs. The facts found by the referee meet all the requirements of the
act exempting from levy and sale the necessary team of any person being
a householder or having a family for which he provides. It is insisted that
the clause applies only to a several owner, as the word 'person' is used in
the singular number. The short answer is that by a provision in our general
law, when a statute refers to any matter or person by words importing the
singular number, several matters or persons shall be deemed to be included,
unless such a construction would be repugnant to the general language
employed. In respect to articles otherwise within the terms of the act,
such ownership as suffices to make them subject to seizure brings them
within the exemption. If each of the respondents had owned a pair of
horses, both teams would have been exempt upon the state of facts found
by the referee. It would be an obvious perversion of the statute to hold that
the plaintiffs forfeited its protection by owning but a single team between
them used for the common support of both. The language of the act should
be construed in harmony with its humane and remedial purpose. Its design
was to shield the poor, and not to strip them. The interest it assumes to
protect is that belonging to the debtor, be it more or less. The ownership
of the team may be joint or several; it may be limited or absolute. What-
ever it be, within the limitations of the statute, the debtor's interest is
exempt, in view of his own necessity, and of the probable destitution to
which its loss might reduce a family dependent upon him for support."

The opposing view is perhaps most clearly stated in the case of
Pond v. Kimball, 101 Mass. 105, as follows:

"There are many difficulties in the way of applying it [the exemption law]
to the case of co-partners and joint owners, and these difficulties we find to
be insuperable. Property purchased with the joint funds of the firm, and
constituting a portion of its capital, must necessarily be subject to all the
incidents of partnership property. On the decease of one member of the
firm it would go to the surviving member, and he would have a right to hold
it, to be used in settling the affairs of the concern and paying its debts. In
the case of numerous partners, can it be said that each would have the right
to claim, as exemption from attachment for the joint debts, one hundred
dollars' worth of material and stock, or is the whole firm to be considered
as one debtor only? Does the exempted property in that case belong to the
partners jointly, or does each take a separate share? It appears to us that the
statute is intended to apply only to the case of a single and individual debtor.
The exemption which it gives is strictly personal. The statute speaks in

the singular number throughout, unless, possibly, the clause as to fishermen be an exception. · Its apparent object is to secure to the debtor the means of supporting himself and his family, by following his trade or handicraft, with tools belonging to himself. It also provides that his family are to be secured in the enjoyment of certain indispensable comforts and necessaries of his property. But property belonging to the firm cannot be said to belong to either partner as his separate property. He has no exclusive interest in it. It belongs as much to his partner as it does to him, and cannot, in whole ·or in part, be appropriated (so long as it remains undivided) to the benefit of his family. It may be wholly contingent and uncertain whether · any of it will belong to him on the winding-up of the business and the settlement of his accounts with the firm. The exemption, in our opinion, is several, and not joint. It applies to the debtor in the singular number, and is personal and individual only. If he desires to form a partnership, and combine his means with those of one, or more than one, other person, he must take the precaution to retain exclusive ownership of his tools and implements, allowing the use of them to his associates, or he will lose entirely the benefit of ·the statutory exemptions as to that kind of property."

In Thompson on Homestead and Exemptions, the author concedes that this question is settled by a decided weight of authority against the right of exemption of a partner out of partnership assets. At the same time, he states that, if the question were res integra, it should, in his opinion, be determined in the affirmative. After reviewing quite a number of authorities pro and con, he comes to the conclusion at last that the reasons urged against this right are those of inconvenience mainly, and are more fanciful than real.

In view of this conflict of authority elsewhere, it becomes important to ascertain the law in Georgia on this subject. There is nothing whatever in the constitutional provisions with reference to homestead and exemptions, nor in the statutes of the state, which touches this question. The decisions of the supreme court of the state, with the one exception which will be noticed hereafter, do not undertake to construe any state law, and are therefore not controlling on this court to the extent that they would be if such were the case. It is probably, in this connection, rather, a question of general law, as to which the federal courts, while preferring to follow the settled law of the state, need not feel compelled to do so.

In Burgess v. Seligman, 107 U.·S. 33, 2 Sup. Ct. 21, the supreme court, in discussing the question as to how far the federal courts will follow the decisions of the supreme court of the state, says:

"When contracts and transactions have been entered into, and rights have accrued thereon, under a particular state of the decisions, or when there has been no decision of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts if the question seems to them balanced with doubt."

The first time this question of a partner's exemption out of partnership assets was before the supreme court of Georgia appears to have been in the case of Harris v.. Visscher, 57 Ga. 229. In that case a homestead was allowed to each member of the partnership in partnership land, the same being assigned to them severally and in several parcels.

In Blanchard v. Paschal, 68 Ga. 32, the supreme court went further, and decided that one partner was entitled to an exemption of personal property belonging to the firm. The language of the court on this question is as follows:

"The theory of the plaintiff in error is that the partnership property must go to the payment of the partnership debts before any individual interests can exist, whereas, in fact and in law, the individual members of the firm are the real owners of the partnership property. And, although the law directs how debts shall be paid, it never loses sight of the fact that a partnership is made up of individuals who own the assets. It is nevertheless true that, in the absence of any legal provisions giving a different direction to the disposition of the assets of a firm, they would have to be paid out as claimed. But here is interposed, between this disposition of the property which an individual may have in a partnership, another overriding and superior right thereto, which no court or ministerial officer can disregard, and no officer has the jurisdiction or authority to seize or sell, except for certain specified debts, in which partnership debts are not included."

It is further said:

"Any other construction of the constitutional provision, and the laws passed in pursuance thereof, would be to put partnership debts upon a higher footing than individual debts, and on the same level with those excepted in the constitution, as well as to deny the right of homestead and exemption to possibly one-fifth of the heads of families in the state, and who happen to be engaged in partnership pursuits. And the constitution, in effect, would then be made to read that each head of a family in this state shall be entitled to an exemption of personalty and a homestead of realty, except partners, and they shall be excluded until they pay off and discharge all their partnership liabilities."

This last paragraph assumes, as will be seen, that this decision is a construction of the constitution and the statutes of the state. If it is a construction of either, of course, the federal courts would follow it. No provision of the constitution or any statute of the state, however, is cited as being the basis of the decision. The character of the decision can be fully gathered from what has been quoted.

In Hahn v. Allen, 93 Ga. 612, 20 S. E. 74, the supreme court reiterates and affirms the law as it had been determined in former decisions, as follows:

"In Blanchard v. Paschal, 68 Ga. 32, this court went a step further, and decided that one partner was entitled to an exemption set apart out of the personal property belonging to the firm, the idea upon which the decision was based being that the assets of a partnership belonged to the individuals composing the firm. We are aware that this decision is not in harmony with the decisions of other courts upon this question, but we are content with the law as it has been settled by this court."

In this decision there is a quotation from Thomp. Homest. & Ex. § 216, which has been referred to as upholding the view of the court.

This question must largely depend upon the true relation of the individuals to the partnership and to the partnership property. While the partnership with relation to separate partners is not a distinct entity, as a corporation would be as to its stockholders, and while it is true that the partners own the partnership assets, still this ownership is, in a sense, a qualified one. Their right as individuals to take the partnership assets is subordinate to the rights of creditors of the partnership to be paid; and consequently it be-

comes a grave question as to whether the partners have such right and title to the property of the partnership, until the partnership is wound up and the property divided, as is contemplated in the homestead and exemption laws. The reply to this probably is that given by the supreme court of Georgia in the quotation from Blanchard v. Paschal, supra,—that the right of a partner to exemption is "an overriding and superior right" to that of the creditors of the partnership to be paid out of its assets. There is certainly much force in the suggestion that an individual who puts his all into a partnership business, and becomes unfortunate, should not, because his property is so invested, be deprived of the humane provisions of the exemption laws; and indeed, in any view of it, the question is one of such grave doubt that, although not compelled to do so, the federal courts should be inclined on this question to follow the well-settled law of the state, as announced in the decisions of its highest courts. This course, makes the bankrupt law on this subject uniform, by giving to every bankrupt that to which he is entitled as an exemption under the law of the state in which he lives.

While it has not been suggested in argument, an additional reason might perhaps be urged in favor of following the state law because of the line of decisions which hold that, where the decisions of the state court have become rules of property, they will be followed by the federal court, and especially with reference to real estate. A brief extract from Burgess v. Seligman, supra, shows the tendency of the decisions of the supreme court of the United States on this subject:

"But since the ordinary administration of the law is carried on by the state courts, it necessarily happens that, by the course of their decisions, certain rules are established which become rules of property and action in the state, and have all the effect of law, especially with regard to the law of real estate and the construction of state constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is."

My conclusion is, therefore, that the duty of this court is to follow the thoroughly considered and well-settled law in Georgia on this subject, and to hold that, in a proper case, partners will be entitled to the exemption allowed by the law of this state out of partnership property.

But conceding, in view of what has been stated, that the bankrupt court, sitting in Georgia, and passing upon an exemption of a citizen of Georgia, would feel bound to allow an exemption to one partner out of the partnership assets, it is nevertheless perfectly clear that the partner seeking the exemption should have an interest in the partnership assets to the extent and to the amount of the exemption sought. If, on an accounting between the partners, the partner applying for an exemption would have no interest in the partnership effects as against the other partners, he would hardly be allowed to claim such an interest as against the creditors of the partnership.

In this case the partnership was between father and son. H. A. is the father, and B. T. is the son. B. T. Camp applies for the exemption out of the partnership property. The evidence taken down

stenographically on the examination of these bankrupts before the referee is on file. This evidence fails to show that B. T. Camp has such interest in the partnership assets as would authorize the allowance to him of an exemption. All it does show is to the contrary. It may be that he has such an interest, but that must be clearly shown before it can be recognized and acted upon. It is frequently the case that junior partners have an interest in the profits of a partnership business, sometimes a very small interest, which they receive as compensation for services only, and without any interest whatever in the capital with which the partnership is conducted. Now, even if their relation to the business makes them, in law, partners at all, it will not do to say that when such a firm becomes bankrupt, and proceedings are instituted, they can come in and take $1,600 out of the firm assets as against the creditors of the partnership. In this case, it will be necessary, therefore, for the referee to take further evidence, and have B. T. Camp to show such an interest as would justify an exemption, in line with what has been stated.

While, in view of what has been stated above, it may be unnecessary at present to determine the next question raised in this case, still, as it is one of general importance and will frequently arise, it may as well be decided now as hereafter. The question is as to the effect in bankruptcy of a waiver of all rights of homestead and exemption contained in notes made by the bankrupt. The law in Georgia is explicit as to waivers. Article 9 of the constitution of the state of Georgia deals with homesteads and exemptions. Paragraph 1 of section 3 of that article provides that:

"The debtor shall have power to waive or renounce in writing his right to the benefit of the exemption provided in this article, except as to wearing apparel and not exceeding three hundred dollars worth of household and kitchen furniture and provisions to be selected by himself and his wife, if any," etc.

Subsequent to the adoption of the present constitution in 1877, by an act of the legislature of Georgia (Civ. Code, § 2863), it was provided:

"Any debtor may, except as to wearing apparel and three hundred dollars worth of household and kitchen furniture, and provisions, waive or renounce his right to the benefit of the exemption provided for by the constitution and laws of this state, by a waiver, either general or specific, in writing, simply stating that he does so waive or renounce such right, which waiver may be stated in the contract of indebtedness, or contemporaneously therewith or subsequently thereto in a separate paper."

The right of one partner to bind another by waiver of homestead and exemption was determined by the supreme court of Georgia in the case of Hahn v. Allen, supra. The decision on this subject, which is rather lengthy, is summarized in one of the headnotes as follows:

"Where one member of a mercantile partnership, in due course of the partnership business, executes and delivers in the name of the firm a promissory note in which all the rights of homesteads and exemptions are expressly waived, the waiver is binding on all the members of the firm, so far as the personal property belonging to the firm is concerned, and no member is entitled to an exemption out of the money arising from a sale of such property

by a duly-appointed receiver, as against a judgment or decree founded on such a note."

So that there can be no question in Georgia as to the binding effect of a written waiver of homestead and exemptions.

The real difficulty presented to the court now is as to whether the bankrupt court will retain the property as to which the right of exemption would otherwise exist, and enforce the waiver obligations against it, or whether it will simply cut the exempt property out of the estate, set it apart, and allow the parties to settle any peculiar rights that they may have against the exemption in other courts of competent jurisdiction. It is urged that as the trustee in bankruptcy really gets no title to such property as is, by law, exempt, and as it is his duty to set it apart, and so report it, and there his duty ends, when his action in this respect is approved by the court, the duty of the court in bankruptcy ends.

An interesting case on this subject is In re Bass, 3 Woods, 382, Fed. Cas. No. 1,091. Mr. Justice Bradley, in delivering the opinion of the court in this case, affirming the decision of the district judge, used the following language:

"In other words, it is made as clear as anything can be that such exempted property constitutes no part of the assets in bankruptcy. The agreement of the bankrupt in any particular case to waive the right to the exemption makes no difference. He may owe other debts in regard to which no such agreement has been made. But whether so or not it is not for the bankrupt court to inquire. The exemption is created by the state law, and the assignee acquires no title to the exempt property. If the creditor has a claim against it, he may prosecute that claim in a court which has jurisdiction over the property, which the bankrupt court has not. Nor does it make any difference that the homestead was not ascertained or set out in severalty until after the proceedings in bankruptcy were commenced, or until after the conveyance to the assignee was executed. Whenever properly claimed and designated, the exemption protects it, and the exemption created by the bankrupt act relates back to the conveyance, and limits its operation. Though not designated when the conveyance was executed, it was capable of being designated; and, on the principle 'id certum est quod certum reddi potest,' it is as much entitled to the benefit of the exception as if it had been designated and set apart before the bankruptcy occurred. And here it is proper to remark that the assignee in this case misconceived his duty and powers when he assumed to judge that the bankrupt was not entitled to a homestead. That is for the court to say, and not for him. It was his business to report to the court whether the property claimed as homestead was or was not within the limit of value which the laws of Georgia allow for that purpose. Unless the court has this information, it cannot determine whether the property claimed is fairly within the allowance for homestead or not, and whether it has jurisdiction over the property or not. What equities might arise if there were several creditors, and some of them had a lien or claim against the homestead property, and the others not, it is not necessary to decide. Those who have no such claim might, perhaps, properly object to those having such a claim being allowed to come in for a dividend against the general assets until they had first exhausted their remedy against the exempted property, on the principle of marshaling assets. This would depend on the question whether the equity of the general creditors is superior to that of the bankrupt and his family in reference to the right of homestead and exemption. In some cases at least, the equities might perhaps be equal, in which case the court would not require the assets to be marshaled. But, even where the right to marshaling existed, the bankrupt court could not assume jurisdiction of the exempted property, and order it to be sold, but would require the favored creditor to pursue his remedy against such prop-

erty in a forum that could lawfully reach it. The decree of the district judge is affirmed, with costs."

To the same effect, see Rix v. Bank, 2 Dill. 367, Fed. Cas. No. 11,869; In re Poleman, 5 Biss. 526, Fed. Cas. No. 11,247; Byrd v. Harrold, 18 N. B. R. 437, Fed. Cas. No. 2,269; In re Stevens, 5 N. B. R. 298, Fed. Cas. No. 13,392; In re Preston, 6 N. B. R. 545, Fed. Cas. No. 11,394. In the last-named case the language of Green, J., in disposing of this matter, is as follows:

"The bankrupt is remitted to such rights and remedies in the exempted property as any other man not a bankrupt has in his own property, with this exception: that this bankruptcy court will protect him in the enjoyment of his exempt property against all acts and claims contrary to the bankrupt law. Taking the designation of the assignee to be good, it follows that, in contemplation of law, the articles exempted never pass to the assignee, and are not now, and never have been, in the possession of the court. The exemption as well as the assignment relates back to the filing of the petition. The excepted articles, in contemplation of law, remain the property of the bankrupt, subject to all legal incumbrances. A lien on articles so exempted cannot be enforced in the bankrupt court, because the court has no possession of the articles the lien affects. It has sent them beyond, or rather declined to receive them within, its jurisdiction, and would need to obtain jurisdiction by setting aside the action of the assignee before it could enforce the lien."

While the provision of the present act is not as full as the act of 1867, it is clearly declared (section 70) that title to exempt property does not pass to the trustee. It seems that the duty of the trustee is to set apart the bankrupt's exemption, and to report the items and value thereof to the court for its approval, and when the exemption has been approved, and the bankrupt's right to it finally determined, the property embraced in the exemption ceases to be a part of the assets administered by the court in connection with the bankrupt estate.