and the right of passage are not thereby injured or interrupted.

This opinion has not been hastily formed, but is the result of as full an investigation as I could bestow upon the subject. It is believed that Pennsylvania has substantially acted upon this principle. It is said that from the Trenton Falls upwards, the waters are in many places diverted from their natural courses, for the accommodation of mills, without the consent of New Jersey. The Bristol canal is to be supplied by tapping the Lehigh river, near to the place where it empties itself into the Delaware. Now the principle that the owner of a river, has a right to insist that the waters of a tributary stream, shall not be diverted from its natural course, until it reaches its destination, is as fully established, as that the course or waters of the main river, shall not be altered or diverted: and the injury to New Jersey is precisely the same in this case as if the water was taken from the Delaware itself.

29th January, 1828.

---

RUNDLE v. JONES. See Case No. 12,138.

RUNDLET (JACKSON v.). See Case No. 7,-145.

RUNDLETT (UNITED STATES v.). See Case No. 16,208.

RUNION (VARNUM v.). See Case No. 16,-892.

RUNKLE (HERRON v.). See Case No. 6,428.

---

## Case No. 12,139a.

### In re RUNZI et al.

[See 3 Fed. 790.]

---

## Case No. 12,140.

### The RUPEE.

[1 Haz. Reg. U. S. 202.]

District Court, D. Massachusetts. 1839.

SEAMEN'S WAGES—DISCHARGE IN FOREIGN PORT.

[A seaman discharged in a foreign port, without his consent, because his vessel was condemned as unseaworthy, is not entitled to recover three months' extra wages, under the act of congress (1 Stat. 131), if the vessel was seaworthy on commencing the voyage, but was rendered unseaworthy by injuries sustained through violent weather.]

[This was a libel in rem for seamen's wages.] The mate of the brig Rupee libelled the vessel for wages, at the rate of twenty-five dollars a month, for several months beyond the time specified in his first article, in which that sum was stipulated, no stated wages having been stipulated in the two subsequent articles under which he served. At Liverpool, whither she had sailed from Boston, the vessel was condemned as unseaworthy, in consequence of injuries she sustained in a storm which she encountered after leaving the former port for Boston, and which compelled her to put back; and he sought, also, to recover three months' wages, as provided by the act of congress, for being discharged in a foreign port without his consent.

THE COURT decided that he was entitled to the rate of wages claimed, up to the time of his discharge at Liverpool, but decreed that his claim for three months' extra wages after his discharge could not be sustained, as the brig was seaworthy when she sailed on her voyage, and the discharge of the libellant at Liverpool having been occasioned by the injury done to the brig by tempestuous weather; therefore the respondents were not bound to pay the three months' extra wages.

---

## Case No. 12,141.

### In re RUPP.

[4 N. B. R. 95 (Quarto, 25).] [1]

District Court, N. D. Ohio. 1870.

BANKRUPTCY — PARTNERSHIP — JOINT PROPERTY — EXEMPTIONS.

Joint assets are liable to the provisions of the bankrupt act [of 1867 (14 Stat. 517)], allowing exceptions. Where there are not sufficient individual assets, assignees cannot refuse to set aside exempt property out of joint property.

[Cited in Re Parks, Case No. 10,765. Cited contra in Re Blodgett, Id. 1,555; Re Handlin, Id. 6,018; Re Corbett, Id. 3,220. Cited in Re Melvin, Id. 9,406.]

In bankruptcy.

J. C. Hutchins and E. H. Ensign, for Geo. W. Rupp.

Geo. P. Hunter, for assignee.

SHERMAN, District Judge. This case comes up on exceptions to the register's report. Two questions are raised:

First. Was Samuel W. Rupp a partner in the firm of George W. Rupp & Co.? The testimony fully establishes the fact that he was a partner.

Second. Is George W. Rupp, the other partner, entitled to claim out of the partnership funds the exemption of three hundred dollars allowed by the laws of Ohio, in lieu of a homestead? This question has heretofore been before me, and I have decided it in the negative on the ground that partnership funds are in the nature of trust funds, and are not liable to the separate and personal claims of the partners, until the partnership creditors are satisfied. The question was not examined with that care that its frequency and importance demand. I have now examined it, and in view of late leading cases, have come to a different conclusion. By the common law, no exception or homestead is secured to a debtor. They both owe their creation to late legislation, both by state and national authority. The policy of both has been adopted by almost if not all the states. The object and policy of such laws, so universally adopted, cannot be disregarded. The whole series of laws on these subjects are remedial, not restricting any prior right, but securing to an unfortunate debtor some portion from the wreck of his

[1] [Reprinted by permission.]

property to save him and his family from immediate want, and to encourage him to further efforts.. They have been adopted from the humane policy of the law, and dictated by the enlightened ideas of the present day, as distinguished from the severe and unhumane laws towards unfortunate debtors that prevailed at no very distant period. By them, the right of an individual debtor to the exemption is not disputed; and it certainly cannot be the policy of the law to permit the individual debtor to enjoy the exemption, while his joint liability with another would give the creditors the power to take the last cent of his property.

We find but few reported cases upon this point. In Radcliff v. Wood, 25 Barb. 52, the supreme court of New York, on a very similar statute ·with that of Ohio, held that joint ownership of property did not exclude the right; and the court of appeals, 37 N. Y. 356, say: "That the language of the act should be construed in harmony with its humane and remedial purpose. Its design was to shield the poor, and not to strip them. The interest that it assumes to protect is that belonging to the debtor, be it joint or several, absolute or limited." The United States district court in Missouri, has also decided the point. In re Mitchell [Case No. 9,656]. Judge Treat there says, "The policy of exemptions and the legal rules on which they rest, modify the strict technical rules by which the rights of creditors are otherwise enforceable." Such would also seem to be the policy of the bankrupt law. By the 14th section there· is saved to the bankrupt, personal property not exceeding five hundred dollars, to be excluded from the general assignment of his effects; while section 36, which refers to partnerships and corporations, makes no distinction between that class of debtors and individuals, no language being used restricting in express terms or by implication the privilege secured by section 14. For the reasons above expressed, I am of the opinion that the exemption claimed by Geo. W. Rupp, bankrupt, should be allowed from the assets of the firm of Geo. W. Rupp & Co.

---

## Case No. 12,142.

### RUSCH v. DES MOINES COUNTY.

[Woolw. 313.] [1]

Circuit Court, D. Iowa. Oct. Term, 1868.

MANDAMUS—UNDER IOWA CODE—TAXATION—PROCEEDINGS TO ENFORCE LEVY—HOW LEVY TO BE MADE.

1. The chapter on the "action by mandamus," of the Revised Code of Iowa, changes the character of the writ to an action for the enforcing of any right to which it may be applicable.

2. This chapter has never been adopted by this court, as a rule of practice, and can have no force here.

---

1 [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

3. This court, in applications for mandamus, has always proceeded according to the course· of the common law.

4. Proceedings to enforce levy and collection of a tax should not be by appointment of commissioners.

5. Even under Iowa statute the aforesaid chapter does not authorize an order appointing a special commissioner to levy a tax upon a county, whose officers have, in disobedience to· the command of a mandamus, neglected to levy a tax, to raise money to pay a judgment.

6. This chapter extends the remedy only to· compel the performance of a duty, the breach of which is followed by damages.

7. The court should not appoint a person to· discharge the official duties of an officer, whose appointment, functions, and qualifications are· prescribed by law.

8. The application for the appointment of a commissioner to levy the tax is addressed to the· discretion of the court, and will be declined on account of the difficulties attending it.

9. The county treasurer, whose sole duty it is· to collect the tax, has never refused to perform his duty, and it cannot be assumed that he will do so. He has most important and delicate duties to perform in enforcing the tax. He should not be displaced by a court.

10. The assessors are not in default. They should not be displaced. Were the commissioner to attempt to levy the tax upon their last valuation of property, he would be powerless to compel the records of that assessment from the· officer who had been summarily removed.

11. If the statute of Iowa confers such power, it is in conflict with the constitution of that state. That constitution declares that the three departments, the legislative, the executive, and the judicial, shall each be kept separate from either of the others. It also provides that no local or special law shall be passed relative to· taxes.

The plaintiff having recovered a judgment at law against the county, applied to the court for a mandamus, directed to the supervisors, commanding them to levy a tax for the purpose of raising the money to pay the judgment. The supervisors made a return to the writ, setting forth matters by which they sought to excuse their disobedience of the order of the court. This return was quashed as insufficient in law, and the question presented itself, how they should be dealt with, and how the court should compel the levy of the tax? The relator moved the court to appoint George W. Clark, the marshal of the district, a commissioner to levy and collect the tax.

Mr. Rorer, Mr. Howell, and Mr. Edmunds, in support of the motion.

Mr. Tracey, contra.

MILLER, Circuit Justice. In this case, a peremptory mandamus was ordered at the last term of the court, directed to the defendants, commanding them to levy a tax sufficient to pay the debt of the relator. This mandate has not been obeyed, though the marshal's return shows that it was duly served upon the supervisors. Instead of levying a tax, they have made a return, which attempts to show matters in excuse for not complying with the command