## FRANCES A. WICKS v. JOHN MITCHELL.

1. MARRIED WOMEN—*Promissory Note; Defense.* In a suit on a promissory note given by a married woman in satisfaction of her husband's debt, an allegation that she has not charged her separate property with the payment thereof, but at the time of its execution refused to in any manner so charge her separate estate, presents no defense.

2.———— *Intent of Maker.* The law presumes that by executing such note she intended whatever may be the legal effect of it, and will not permit her to deny such effect, nor to avoid the instrument by declaring at the time of its execution that she will not do what she is actually doing.

*Error from Bourbon District Court.*

MITCHELL and two others brought their separate suits upon three several promissory notes. Except as to the amount, the payee, and day of payment, the notes were alike. The following is a copy of one of the notes:

"$677.81.                    FORT SCOTT, AUGUST 3d, 1870.

"NINE MONTHS after date we or either of us promise to pay to the order of John Mitchell six hundred and seventy-

seven and 81.100 dollars, for value received, and with interest from date at the rate of seven per cent. per annum.

"E. B. Wicks.

"F. S. Boice.

"Mrs. Frances A. Wicks."

*Mrs. Wicks* filed an answer in each case as follows:

[Title:] "Now comes the defendant Mrs. Frances A. Wicks, and appearing and answering for herself alone says, that at the time of the execution and delivery of said note described and set forth in said plaintiff's petition she was, and is now, the wife of the said E. B. Wicks, and as such wife signed said notes as surety for the said E. B. Wicks and F. S. Boice; that at the time, and before, and after the execution of said notes the said E. B. Wicks and F. S. Boice were doing business in partnership as furniture dealers at the city of Fort Scott, and said notes were given in discharge and liquidation of certain accounts for goods and merchandise held by the plaintiff against the said partnership firm of Wicks & Boice; that there was no consideration between the said plaintiff and this defendant for said promissory note; that said note was not given to the plaintiff for the benefit of this defendant, nor for the use and benefit of her sole and separate property, nor with reference to the same, nor for anything which might or could inure to its or her benefit; that this defendant did not nor has she charged her sole or separate property with the payment of said note, but at the time of its execution refused to in any manner so charge her sole and separate property, or any part thereof. Wherefore," etc.

And to this answer, in each case, the plaintiff demurred, assigning therefor "that said answer does not state facts sufficient to constitute a defense to the action." The cases were tried at the September Term 1871, and in each case judgment upon the demurrer was given for the plaintiff. The other defendants made default. *Mrs. Wicks* brings the cases here by petition in error.

*McComas & McKeighan,* for plaintiff in error:

The only question in these cases is, was the decision of the court in sustaining this demurrer right? We say it was not, and that the answer sets up a complete defense to this action.

This court in *Deering v. Boyle*, 8 Kas., 525, has substantially adopted the views of Mr. Bishop in his late work upon the law of married women, (vol. 1, § 872, et seq.,) and denied the authority of *Yale v. Dederer*, 22 N. Y., 450, and *Corn Exchange Ins. Co. v. Babcock*, 42 N. Y., 613. The question as we understand it, that is decided in *Deering v. Boyle* is, simply, that in equity a *femme covert*, so far as her separate estate is concerned, is to be regarded as a *femme sole*, and that if she gives her promissory note it will be presumed that she intends to charge her estate with its payment. We shall endeavor to distinguish this case from *Deering v. Boyle*, and show the court that it does not come within the principle stated in that case.

The New York cases hold that she will not be presumed to intend to appoint her separate property, *pro tanto*, to the payment of the debt unless she declares her intent so to do in the contract itself, and this court holds that she will. Is not the real difference one of fact? *What did she intend to do?* It is admitted that she cannot make a contract (except for necessaries) which will bind her husband; that she cannot make a contract upon which a personal judgment can be rendered against herself. What then can she do? If she gives her note, or otherwise imposes on herself a legal obligation, she *may* agree also that the same may be paid out of her separate property. It is this last agreement, either express or implied, that a court of equity enforces. But she makes the agreement herself, the court does not make it for her. When then she gives her note and says nothing about how it is to be paid, it may be fair to presume she intended it as a charge upon her separate property. But the strength of this presumption must depend upon circumstances. If she herself receives the consideration for which the note is given, it may be strong enough to justify the language of Mr. Bishop. But suppose she does not? Suppose her husband should be a profligate, a drunkard, and that some person should come to her with a note that he had given for money he lost by gambling, and this party would tell her that he was arrested—

would be sent to the penitentiary unless she signed the note. In terror and excitement, with no one to consult with, she would sign a note for an amount equal to her whole estate left to her by her father's or mother's will. What would be the "presumption" of a court of equity in this case? That it would be "allowing her to plead her own fraud" to say she did not intend that the whole of her little estate, upon which she and her children depended for support, should be swept away for the payment of this note procured by fraud and robbery, when she was perhaps in utter ignorance of the legal effect of such paper, and only did what her affection for husband and children prompted her to do? We grant that this is an extreme case; and so is the one proposed by Mr. Bishop, where a woman goes "into a shop and buys a dress," etc.

Now we say a court does not make contracts for a *femme covert* any more than it does for any one else. Is it not true that when a married woman gives her note, it is *a question of fact* as to whether she intends it as an appointment, *pro tanto,* of her separate estate to the payment of that debt? And is it not a question also whether this *intention* or agreement so to do is evinced in the note itself, is presumed from the circumstances of her giving the note, or is established by evidence *aliunde?* If you are not to look at the circumstances of each case—if you are not to look beyond the "promise to pay," what becomes of Mr. Bishop's illustration? How would you ever know she went into the shop and bought the dress? Is there not a very plain difference between the equities of the case put by Mr. Bishop, and the case of a woman giving her note for her husband's debt? In the first case if she does not pay, the trader loses his dress. In the second he loses nothing. He had before she signed the note the debt against her husband; after she refuses to pay he has the same thing.

In the case now before the court the plaintiff in error avers in her answer that she did not agree or intend that said note should be a charge upon her separate estate, that she refused to make it such a charge. Will this court say she did? and

that, too, when the demurrer admits her answer to be true? Has she defrauded the defendants in error? How? They sold goods to Wicks & Boice, gave the credit to them. They had this debt against them when she signed this note. They have it now. If they have gained nothing by her signature to the note they have lost nothing. How then has she defrauded them? In Maryland it is decided, when a *femme covert* signs a note it is competent to show by parol evidence that she intended to charge her separate estate. If this is so, why is not the converse of the proposition also true? 1 Md. Ch., 212; 16 Md., 549.

In Deering v. Boyle, this court say "we think the supreme court of Missouri has decided this question correctly." Upon the doctrine of the Missouri courts this case must be decided for the plaintiff in error. *Coats v. Robinson*, 10 Mo., 557, is the first case. In that case a married woman gave her note for land; she took a title bond *in her own name*, for the land, took possession of it in her own name. Afterwards a deed was tendered to her for the land and she was sued upon the note. She tried, but failed, to prove that the note was to be paid in some other way than out of her separate estate, (and the admission of this testimony was evidence that the court which tried the case, was willing to enforce the contract that she did in fact make, and did not assume to make another contract for her.) The court decided that she should pay the note. The consideration of the note went to her separate estate. Is there any analogy between that case and this? The last case in Missouri is *Schaforth v. Ames*, 46 Mo., 115. The judge who gives the opinion in that case uses this language: "A promissory note *is evidence* to show her intention to charge her separate estate." How much evidence? The court answers the question: "It is sufficient evidence *prima facie* to establish such an intention without the introduction of other evidence." Thereby clearly implying that the question of "intention" might be made an issue in the pleadings, and evidence introduced *pro* and *con*. But how much "evidence" the note would be, when it is admitted by

the pleadings that in fact there was no such an intention, is quite another question.

Where the *femme covert* had herself received the consideration of the note, and where credit was given her on the strength of her separate property, it would perhaps be allowing her to plead her own fraud to say she did not intend to charge her separate estate with its payment. And this is the case supposed by Mr. Bishop. But surely the reasoning of that learned author will not apply to this case where the *femme covert* received no consideration for the note either to herself or "her separate estate," where the note was given for the pre-existing debt of other parties, where the payees parted with nothing for *her* signature, and where there is no charge of fraud in the petition on her part, and no circumstances in the case from which it can be presumed. We say then, whether the plaintiff intend to charge her separate estate with the payment of this note or not, is a question of fact, and it is admitted by the pleadings that she did not; and if she did not, then the demurrer ought to be overruled.

The only part of our statute which can be claimed to have any bearing upon the subject, is the section which provides that a married woman "*may* enter into any contract with reference to her *separate estate* in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property." (Gen. Stat., p. 563.) We do not deny but that she "*may*" do this, but *has* the plaintiff in error in this case made "any contract with reference to her separate estate?" Such statutes are denominated generally "statutes to protect the rights of married women;" if this construction can be given to this clause, it would be more appropriate to characterize them as "statutes to lure married women into the meshes of their husband's creditors."

*C. O. French,* and *W. C. Webb,* for defendant in error:

The main question in this case has been decided in *Deering v. Boyle,* 8 Kas., 525. An attempt was made in framing the

answer in this case to escape from the argument and the logic of *Deering v. Boyle ;* and counsel have made an ingenious and pathetic argument to distinguish this case from that, and to secure a different decision. But when the case is stripped of the somber robes thrown around it to excite sympathy and work upon prejudice, the naked fact exists that plaintiff in 'error, without being deceived, defrauded, or coerced, signed the notes sued upon ; and the naked question presents itself, Shall *her act,* her free and deliberate execution of the notes, be held a mere idle and useless ceremony, because she says she did not *intend* to bind herself by her act, and so declared herself at the time ? Taking her answer as the demurrer admits it, to be true, and we have her *acts,* and *her words*—the one a deliberate execution of a promissory note, or contract—the other a denial of the fact that she was doing what the act itself imported. Is it not a proper place to apply the adage, *"Actions* speak louder than *words ?"* The word-picture drawn by her counsel, divested of its appeals to our sympathy, is this : Mitchell presents himself to Mrs. Wicks and says, " Your husband owes me ; I have his note ; he has suggested that you will sign it as surety : will you do so ?" And Mrs. Wicks takes the note, reads it, and with pen in hand affixes her signature, saying, as she writes, " I sign this note in order that it may on its face appear to be my act, and as such appear to be legally binding on me in so far that my separate property may be taken to pay the same, but I tell you that this act of mine is not my act, and the intent which this act of mine evinces is not my intent, and this signature of mine is a mere blank, and I will not pay nor permit you to collect this note out of my property"—and having executed the note she delivers it to Mitchell. Now what is the legal effect of all this ? She says she does not *intend* to bind her estate, but her *act* establishes legal liability. It is that which speaks; and if it is her voluntary act she will not be permitted to stultify herself, will not be allowed to say that the act is not her act, that the contract is not her contract. If she did not intend to sign, she should have *refused* to do so ; if she

did not intend to bind her estate she should have omitted doing the *act* which does bind it. The law, as heretofore expounded by this court, determines the case against the plaintiff in error. If the law works injustice the remedy is with the legislature.

The opinion of the court was delivered by

BREWER, J.: These three cases present the same question and may be considered together. The defendants in error brought their several actions upon promissory notes signed by plaintiff in error, and by E. B. Wicks and F. S. Boice. Plaintiff in error answered, alleging her coverture, that said notes were given in satisfaction of certain accounts due by the firm of Wicks & Boice, that no consideration therefor passed to her, that they were not given for her own benefit or for the benefit of her separate estate, nor with reference thereto, and that she "did not nor has she charged her sole or separate property with the payment of said notes, or either of them, but at the time of their execution refused to in any manner so charge her sole and separate property or any part thereof." Demurrers to these answers were sustained, and judgments rendered.

The only thing to distinguish these cases from the case of *Deering v. Boyle*, 8 Kas., 525, is contained in the last clause of the answers just quoted. It was in that case held that "when a married woman executes a promissory note in payment and satisfaction of her husband's debt an action may be maintained against her on said note, and her separate property applied in payment of the same." Counsel for plaintiff in error claim, arguing from that decision, that her separate estate is so charged because it is presumed from the giving of the note that she intended to charge such estate; or, in other words, that the note is simply evidence of her intention. They further claim that such a note is only *prima facie* evidence, and may be overthrown by other testimony; that therefore in every such case a question of fact exists as to her *intention;* that here she alleges that it was not her intention

to charge her separate estate, and that hence, the demurrers, admitting that fact, should have been overruled. The clause in the answers quoted contains two allegations: 1st, That she did not charge her separate property. This is an allegation of a legal conclusion. She admits the execution of the notes. Now whether thereby she charged her separate property is a question of law; for there is no claim in the petitions that she ever executed any mortgage or other instrument specifically appropriating certain property to the payment of these notes. The only question raised by the petitions is whether she has executed such an instrument, as, not being paid, can be collected out of her separate property. The second allegation is, that she refused at the time of the execution of these notes to charge her separate property. This is an allegation of fact. This may properly be considered as simply an allegation that she refused by mortgage or otherwise to make any specific appropriation of any of her separate property to the payment of these notes. In other words, she did nothing further than executing these notes towards charging her separate property. In this view the question raised by the learned counsel for plaintiff in error is not in the cases, and they fall within the letter as well as the spirit and reasoning of the rule laid down in *Deering v. Boyle.* But suppose this be not a fair interpretation of this clause in the answers, and that the question as presented by counsel is fairly in the record: were the demurrers improperly overruled? Will a married woman be permitted to plead a refusal to charge her separate estate in avoidance of the obligation created by her promissory note? Will she be permitted to admit the execution of a written instrument, and to assert, in discharge of it, that at the time she executed it, she said she would not do what she was doing? Will she be allowed to deny the legal effect of her own promises? The notes created no personal obligation against her. This seems to be undisputed. They were promises to pay, which could be enforced out of her separate estate, or else they were nullities. They were valid and could be enforced out of her separate property unless

made nullities by her assertion that they should not be paid therefrom. When a party under no disability has executed a deed, mortgage, bond or note, would an admission of their execution be affected in the slightest degree by an allegation that at the time of execution the party declared he would not convey, or pay? A party is held obligated to do that which is the legal effect of the instrument he executes. The rule is as fixed and clear for married women as for any other persons. When they sign promises to pay, the law holds that they act in good faith, and that they intend to do what they have promised. It considers that instrument a valid instrument, and as it can be held valid only because enforceable against her separate estate it enforces it against such estate. It will not permit her, even if she desire it, to plead her own dishonest purpose in avoidance of the instrument she has signed and delivered.

Counsel in strong language picture the hardship which may ensue where an unsuspecting wife, lured by the entreaties of her husband, or frightened at the arrest and possible disgrace which threaten him, signs as surety notes for his indebtedness, and shortly thereafter finds all her separate property swept away from herself and children. If this be the result, the statutes of these later times, which are entitled "statutes to protect the rights of married women," counsel claim, were more appropriately denominated "statutes to lure married women into the meshes of their husbands' creditors." The possibility of results like this, in isolated cases, could not of course determine the rule. Considerations of that kind may appropriately be pressed in the legislature, but can have no weight with us who are to determine what is, not what should be the law. It may not be inappropriate to say, however, that with every enlargement of the rights of married women comes a corresponding increase in their responsibilities. When they take the right to control their separate estates, they assume the risks of such control. When the law gives them the privileges of separate individual citizens, they take with it all the responsibilities and dangers of such

citizens. Given the right to contract, they assume the liabilities of contractors. At first, it is true, hardships may in isolated instances ensue from the inexperience of women in matters of business. Such hardships always arise upon any change in the rules of property or business. While we may regret such hardships, we may rejoice in the change, believing the new rule the better rule, and that society, readjusted upon the basis of the absolute independence of all adult citizens in matters of property, will more successfully work out the greatest good for all. But whether the change be for the better or worse cannot affect our determination. We have no power of legislation or change. The judgments will be affirmed.

All the Justices concurring.