Boynton, J.
The district court found, from the evidence that the plaintiff in error intended to charge her separate estate with the payment of the note sued on, and decreed accordingly. .The question now presented is, was there error in such finding ? It has long been the settled law of this court, that a finding of facts, from the evidence, by the court trying the cause, will not be disturbed by a reviewing court, unless it clearly appears that such finding was not sustained by the evidence given at the trial. Merrick v. Boury, 4 Ohio St. 60 ; Dean v. King, 22 Ohio St. 134. But we need not invoke the application of this rule to the present case, as we are of the opinion that the finding was fully warranted by the evidence.
The husband of the plaintiff in error, at the time the note was executed, was, to her knowledge, wholly insolvent. When the debt was contracted for which the note was given, as well as at the date of the note, she was possessed of a valuable separate estate, of which fact the defendant in error had knowledge; and, according to the testimony of one of them, she assured them that the goods for the payment of which the note in part was given should be paid for. The time for the payment of the note was extended for the period of nearly six months from its date. In view of these facts, the inference is, at least, a reasonable one, that, by executing the note as surety for her husband, she thereby intended to charge her separate estate with its payment. It is not claimed that she was deceived or imposed upon, or subjected to any improper or undue influence, or that she executed the note for any other purpose or object than the one naturally to be implied from the act itself, and the circumstances surrounding it.
The power of a married woman to bind her separate estate, in equity, for the payment of a promissory note, on which she becomes a surety, although denied in Perkins v. Elliott, 23 N. J. Eq. 526, is sustained by a great weight of authority. It rests on the principle, now well settled in courts of equity, that, as respects her separate estate, she is to be treated as a feme sole to the extent of her "power of *301 disposition over the same, and as fully capable of binding it by engagements entered into in respect to it as if the common-law disability of coverture were removed. And, except in eases where she may bind herself at law, the principle applies to separate estates under the statute, as well as to estates settled to her sole and separate use, by deed or devise. Any engagement that she could enter into were she sui juris, and by which she could create a debt binding at law, she may in equity charge upon her separate estate, unless in so doing she exceed the limitation, if any there be, upon thej/ws disponendi. Pollock on Principles of Contracts, 73.
Where this charge is made, her estate, in equity, becomes the debtor, and as courts of law deal only with the legal rights and liabilities of parties, and are therefore incapable to give relief where no legal liability has been incurred, courts of equity carry the intention into effect by subjecting the estate to the payment of the debt intended to be charged upon it. In view of this power of a married woman having an estate to her sole and separate use, to bind it by her engagements, we think it justly follows that when she executes, or joins her husband or a stranger in executing, a promissory note upon a valid consideration moving to her or him, an inference arises, where no fraud or imposition is shown, that she thereby intended to charge her separate estate with its payment. That Levi v. Earl, 30 Ohio St. 147, is opposed to this view is undoubtedly true, but a careful examination of that case has satisfied us that the conclusion reached is not only against the weight of authority, but is founded on a misconception of the principle upon which some of the cases reviewed in the opinion proceed, particularly of the case of Johnson v. Gallager, 3 De Gex, F. & J. 494. The bill in that case sought to charge the separate estate of Mrs. Gallager with the payment of a bill of goods purchased by her while living apart from her husband. The opinion of Lord Justice Turner is an exhaustive examination of the nature and extent of the rights and remedies of the creditors of mar *302 ried women against their separate estates. The particular question involved was, whether, in the circumstances of that case, the separate estate of Mrs. Gallager Avas chargeable with the payment of the price of the goods purchased. The conclusion was reached, that, living apart from her husband, and having a separate estate, the court was bound to impute to her, when purchasing the goods, an intention to deal with her separate estate, unless the contrary Avas clearly proved. In reviewing the English cases bearing on the subject, for the purpose of ascertaining the circumstances from which an intention to charge the separate estate of a married woman Avith her engagements will be implied, the Lord Justice marks a clear distinction betAveen bonds, bills, and promissory notes, and what he denominates her general engagements. The learned judge delivering the opinion in Levi v. Earl seems to have overlooked this distinction, and to have applied the reasoning designed to show when and under what circumstances an intent upon the part of a married woman to charge her separate estate with her general engagements will be implied, to the question of the liability of her estate for the payment of her promissory notes.
This is apparent from the citation given on page 181, of language ascribed to Lord Justice Bruce, but which, evidently, is taken from the opinion of Lord Justice Turner (3 Be Gex, F. & J. 514). The citation is: “ Upon the whole, I have come to the conclusion that not only bonds, bills, and promissory notes of married women, but all their general engagements may affect their separate estate.” The language actually employed was that “ not only bonds, bills, and promissory notes, but also their general engagements may affect their separate estate.”
That the same presumption of an intention to charge the separate estate does not arise where the engagement is one from which, were the married woman sui juris, the laAA’’ would imply a promise to pay the debt contracted, as when the promise is express and in writing, is very clearly shown by that case. No question is made or doubt *303 suggested, that where the engagement is by promissory note, the intention to charge is imputed without the aid of extrinsic proof, but when not in writing, it must be made to appear that the engagement was made with reference to or upon the faith or credit of the estate; a question of fact to be determined by the court upon all the circumstances of the case.
On page 510 of the report of Johnson v. Gallager the Lord Justice says : “ There are many eases which have established that bonds, bills of exchange, and promissory notes of married women are payable out of their separate estates. There has, indeed, been much question as to the mode in which these instruments take effect against the separate estate, a point to which I shall presently advert, but that in some mode or other they take effect against it can not upon the authorities be denied. It has been a more disputed and is a more doubtful question, whether the separate estates of married women are liable for their general engagements, such as trademen’s bills and claims of that description
He then proceeds to show,that such bills and claims are chargeable against the estate, where the debt was incurred on its faith or credit, and that the corpus of the estate is chargeable with their payment, if within the power of disposition given to the married woman by the instrument creating the estate. We are not now- dealing with the question whether the distinction taken in Johnson v. Gallager between a genei’al engagement, and one created by bond, bill of exchange, or promissory note, is well or ill-founded. It answers our present purpose to show that the distinction there exists, and, consequently, that the court, in Levi v. Bari, fell into an error in supposing that the reasoning in the former case lends any support to the judgment rendered in the latter. The doctrine, however, laid down by Lord Justice Turner has been distinctly approved in Picard v. Hine, 5 L. R. (Ch. Appeal) 274, and in The London Chartered Bank of Australia v. Lempriere, 4 L. R. (P. C.) 572. In the former case, Lord Chancellor Hatherley said it was very desirable that the position of a married *304 woman, who contracts as if she were feme sole, should be placed on a well understood basis, and that that had been done by Lord Justice Turner in his judgment in Johnson v. Gallager.
Mr. Pollock, in his late work on the Principles of Contract, 68, in classifying the cases or instances in which, by the law of England, the intention of a married woman to charge her separate estate will be implied, says that such intention is presumed in the case of debts contracted by a married woman living apart from her husband, and adds, that “ the like intention is inferred where the transaction would be otherwise unmeaning, as where a married woman gives a guaranty for her husband’s debt, or joins him in making a promissory note.” This was the principle upon which the case of Davies v. Jenkins, 6 L. R. (Ch. D.) 728, decided in 1877, was determined.
In this country, the authorities on the subject of the power of a married woman to create a charge against her separate estate as surety, seem to be divided into four classes : 1st. Those that deny the power out and out. 2d. Those that admit the power, but require the instrument creating the debt to disclose the intent, to charge in express terms. 3d. Those that hold the intent to bind the estate, or to pay the debt out of it, will be presumed from the mere execution of a promissory note. And 4th. Those that deuy that such presumption or inference arises unaided by extrinsic proof. The first of these classes has no bearing on the point under discussion, and the rule adopted in the second has never been recognized as the law of this state. The question as between the other two, resolves itself into this :
What inference is to be drawn from the act of a married woman, having an estate to her sole and separate use, in signing the promissory note of another, as surety, as respects her intention or purpose in so doing. In view of the fact that in the act of signing she incurs no legal liability, the question admits of but one rational answer, and that is, in the absence of proof showing fraud or imposition, that *305 she intended thereby to make the debt a charge upon her separate estate. Unless this inference is drawn, her act becomes wholly vain and frivolous, and entirely destitute of: a purpose or a meaning.
That such is the natural implication from the act of signing has been distinctly affirmed in numerous cases.
In Bell v. Kellar, 13 B. Mon. 381, the rule was stated as follows: “ If a feme covert, having a separate estate, make or indorse a note, the presumption is that it was the intention, and the effect is, to charge her separate estate.”
In Cowles v. Morgan, 31 Ala. 535, it was held that, “ a promissory note executed by the wife during coverture,, jointly with her husband, is a charge upon her sepai'ate estate created by contract.”
So, in Burnett v. Hawpe’s Ex’r., 25 Gratt. 481, it was held that, “ if a wife contracts a debt for herself, or for her husband, or jointly with him, the instrument executed by her is sufficient to charge her separate estate, without any proof of a positive intention to do so, or even a reference^ to such estate contained in the writing.”
In The Metropolitan Bank v. Taylor, 62 Mo. 338, it was-held that, “ in reference to her separate estate, a’ married woman is to be treated as a feme sole, and the giving of a. note, or making of a written contract, by her, raises the-presumption that she intends to bind her estate.”
This case was on a note executed by the wife as surety for her husband.
The same rule prevails in Kansas. Deering v. Boyle, 8 Kan. 523; Wicks v. Mitchell, 9 Kan. 80.
Judge Story, in commenting on the subject, says : “Indeed, it does seem difficult to make any sound or satisfactory distinction on the subject as to any particular class of debts, since the natural implication is, that if a married woman contracts a debt she means to' pay it, and if she-means to pay it and she has a separate estate, that seems to be the natural fund which both parties contemplated as-furnishing the means of payment.” 2 Story’s Eq. Jur., §, *306 1400. See also, to the same effect, 1 Bishop on Married 'Women, § 873.
In Avery v. Van Sickle, ante, 270, we held, that where a "married woman executed a promissory note for property acquired by her, an implication arises, in the absence of proof showing a different understanding, that she thereby intended to charge her separate estate with its p'ayment. If she executed the note upon the understanding that her separate estate was not to be bound for its payment, its enforcement against her would operate a fraud upon her. No one will pretend that this c’ould be done. But when she executes a note, either as principal maker or surety, and has not been deceived in so doing, nor subjected to any undue influence, we think a just inference arises that she thereby intended to deal on account of her estate, and to bind the same in equity for the payment of the note ; and that, as a necessary result, a court of equity will give effect to such intention, by subjecting the estate to the payment of the note in the mode prescribed by the statute for enforcing claims against the separate estate of a married woman. Her liability, or rather that of her estate, does not depend on whether or not the debt incurred on its account is beneficial to her or otherwise. If made, and no fraud or imposition is shown, the court can not refuse relief from the mere fact that the engagement entered into proves unprofitable or injurious. It follows from this result, that Levi v. Earl, supra, and Rice v. Railroad, 32 Ohio St. 380, in so far as they are in conflict with the principle •on which the present case is determined, must be overruled.

Judgment affirmed.