## HART vs HIATT.

### Opinion delivered January 12, 1899.

*1. Partnership.*

> W., E. and A. had been engaged for several years in raising wheat, contributing to the business and sharing the profits and losses. *Held,* This constituted a partnership.

*2. Exemption—Partnership Property.*

> Partnership property is not exempt from execution or attachment, whether the debt sued upon be one against the partnership or against the individual sued.

*3. Appeal—Exception to Master's Report—Judgment.*

> A judgment sustaining exceptions to a master's report is a final order from which an appeal is allowable.

Appeal from the United States Court for the Northern District.

WILLIAM M. SPRINGER, JUDGE.

Action by James Hart against W. F. Hiatt and others. Judgment sustaining defendant's exceptions to a referee's report.   Plaintiff appeals.   Reversed.

The facts involved in this controversy are sufficiently shown by the report of the special commissioner, G. B. Denison, and the exceptions thereto, which are as follows, to-wit:

### Report of Special Commissioner.

"Heretofore, by agreemment of counsel for the respective parties plaintiff and defendant in the above entitled action, the court referred certain questions arising in said action to the undersigned as referee or special commissioner, and thereafter an agreement was entered into by said counsel, reduced to writing, and signed. It is as follows: 'By agreement of counsel, the above-entitled causes are by order of the court this day referred to G. B. Denison, as special commissioner to take proof and report the facts and the law upon all motions thus far arising therein; also on the application for the sale of the attached property, and to report the facts and the law upon the motions separately to quash the three supersedeas therein.' The agreement is returned to be filed contemporaneous with this report. By consent of all parties, the testimony offered was taken stenographically by Myra Young, notary public, and extends over three hundred typewritten folios, and occupied a number of hours on several different occasions. An examination of the pleading discloses the following: June 17, 1896. C. W. Mitchell, as receiver of an insolvent bank in Kansas, brought action in this court, against W. F. Hiatt and S. E. Hiatt, upon a certain promissory note. Proper steps were

taken to secure an order of attachment, and it was levied on
June 20, 1896, upon property consisting of agricultural
implements, cows, heifers, calves, horses, colts, crop of oats,
and the crop of growing wheat upon 873 acres. July 13,
1896, W. F. Hiatt gave notice of his intention to file a sched-
ule of his property, and claim his exemptions, with the clerk
of the court. Such schedule was filed, and, proving defect-
ive, another notice was given, and a schedule of property
and claim of·exemptions were filed with the clerk, July 20,
1896, to which plaintiff filed an answer the same day. July
21, 1896, the clerk issued a supersedeas, including, in the
enumeration of the property for which· he allowed
supersedeas, 'one undivided third interest in two car loads
of wheat, loaded on side track at Talala, I. T., valued at 35c
per bushel,—$107.80; one undivided third interest in twenty-
five stacks of wheat in the field.' July 21st, defendant W.
F. Hiatt moved to quash the return of the marshal, because
it included property claimed as exempt. Then in the order
named, at different dates, were filed affidavits of Lena S.
Graves, E. Z. Hiatt, and Arthur Hiatt, for portions of the
property levied upon; the interpleas of those parties, that
of E. Z. Hiatt claiming the ownership, among other proper-
erty, of 'one undivided third interest in two car loads of
wheat, loaded on side track at Talala, I. T.; one undivided
third interest in twenty-five stacks of wheat in field'; answer
of W. F. Hiatt; motion of defendant W. F. Hiatt to compel
marshal fo turn over property; motion of plaintiff for order
of sale of attached property; affidavit of plaintiff for judg-
ment on pleading; controverting affidavit of W. F. Hiatt;
motion of S. E. Hiatt to dismiss as to her, because she was
feme covert at time of making note; answer of plaintiff to
interpleas; motion of plaintiff to quash supersedeas; answer
of S. E. Hiatt. On June 17, 1896, James Hart commenced
his action in this court against W. F. Hiatt, S. E. Hiatt, and
E. Z. Hiatt, upon their promissory note, and procured an

order of attachment, which was by the marshal levied upon
the same property as the order of attachment in the case of
S. W. Mitchell vs. W. F. Hiatt and S. E. Hiatt, the levy
being made subject to the levy in that case, and being made
upon the property as the joint property of W. F. Hiatt and
S. E. Hiatt.   The same steps, and in the same chronological
order, were had in this case as No. 339; and, in addition
thereto, E. Z. Hiatt filed his claim of exemptions, in which
he claimed an undivided third of the wheat.   I heard the
testimony of the various witnesses, and have carefully read
it since, and report as follows:

"I find from the weight of the testimony:   First.
That W. F. Hiatt, E. Z. Hiatt, and Arthur Hiatt have been,
for several years prior to the levy of the attachment in
these cases, engaged in the business of raising wheat, and
contributing to the business, and sharing the losses and
profits, and that the same relation between them existed at
the time the attachments went into the hands of the mar-
shal, and were levied.   Second.   I find that the property
levied upon by the marshal in these cases was property
which had been contributed by one or the other of W. F.
Hiatt, E. Z. Hiatt, and Arthur Hiatt, to the joint enterprise
they were engaged in at the time they so engaged in it, or
that it was the increase or product thereof, and particularly
that the crop of wheat levied upon was the result of such
joint enterprise.   Third.   I find that there was a partner-
ship existing of which W. F. Hiatt and E. Z. Hiatt were
members, each having an equal one-third interest in said
partnership.   Fourth.   I find as a matter of law that, when
partnership property is levied upon under an attachment,
the defendant in the attachment has not the right to claim
his exemptions, whether the debt sued upon be one against
the partnership or against the individual sued.   Fifth.   I
find that the schedule of property and claim of exemptions
made by W. F. Hiatt in case No. 339 (C. W. Mitchell, Re-

ceiver, etc., vs. W. F. Hiatt and S. E. Hiatt), with what is shown to have been presented to the clerk of this court on the hearing thereon, was not sufficient to authorize the issuance of the supersedeas, and that, therefore, the motion made by plaintiff to quash such supersedeas should be granted. Sixth. I find that the schedule and claim of exemptions made by W. F. Hiatt in No. 340 (James Hart vs. W. F. Hiatt, S. E. Hiatt, and E. Z. Hiatt), with what is shown to have been presented to the clerk of this court on the hearing thereon, was not sufficient to authorize the issuance of the supersedeas, and that, therefore, the motion made by plaintiff to quash such supersedeas should be granted. Seventh. I find that the schedule of exemption made by E. Z. Hiatt in No. 340(James Hart vs. W. F. Hiatt, S. E. Hiatt, and E. Z. Hiatt), with what is shown to have been presented to the clerk of this court on the hearing thereon, was not sufficient to authorize the issuance of the supersedeas, and that, therefore, the motion made (by) the plaintiff to quash such supersedeas should be granted. Eighth. I find that the motion in each case made by the defendant to quash the return of the marshal, because his return shows a levy upon property claimed as exempt, should be denied. Ninth I find that the motion made by W. F. Hiatt, in No. 339, and by W. F. Hiatt and E. Z. Hiatt, in No. 340, to compel the marshal to turn over the property for which supersedeas was issued, should be denied.

"In making these findings I have not attempted to pass upon each specific article in each of the schedules and claim of exemptions. It may be that there are some articles of property in one or more of them that are distinctly individual property, and as to which the right of exemption exists in the claimant. It would seem, as to such articles, if any there are, counsel can agree. I have reached the conclusion that if the bulk of the property that was claimed was allowed by the clerk, and a supersedeas issued, when

in fact and law it was not exempt, the issuance of the super-sedeas would be erroneous, even though some articles were exempt.    The counsel for defendant having notified me, soon after the submission, that the property for which an order of sale was asked by plaintiff had been bonded, I do not report upon the motion for such order, further than to say I find the testimony upon that question was sufficient to have authorized an order of sale for the live stock.  Original papers which were offered in evidence, copies of which are attached to the testimony, I, by agreement of counsel, hold for safe-keeping, subject to the inspection of the parties and order of the court.    It was stipulated by the counsel that the evidence should be taken in shorthand, and transcribed under my order and direction.    This was done; and I hereto attach the bill of Myra Youug for the services rendered under that stipulation, showing the number of hours engaged in taking the testimony, and the number of folios, and the amount charged therefor, at the usual rates, amounting to forty-two dollars ($42); and I respectfully recommend that the bill be allowed and ordered paid by the parties, in such proportion as the court may deem proper, and taxed as costs in the case.    All of which is respectfully submitted.

"G. B. Denison, Special Commissioner."


Exceptions to report of Special Commissioner:


"The defendant excepts to the third finding of fact, because the same finds that a partnership existed, when in fact the proof shows that the relation between the parties was that of tenants in common.    Defendants except to the fourth finding, because the commissioner finds that, as a matter of law, the defendant could not claim exemption in partnership property when the debt sued on was an individual one—the defendant insisting, first, that the relation of the parties under the facts proven was not a partnership;

second, that, if a partnership, it was a nontrading partnership, without debts or liabilities of any kind, owning no property, except such as was readily susceptible of division; third, that the debt sued on was the debt, not of the partnership, but one of the individuals; if therefore, the property was such as to be liable to attachment for the individual debt, it could certainly be exempt by the individual. Defendant excepts to the 5th, 6th, 7th, 8th and 9th findings, for the reasons above set forth, and asks that the report of the special commissioner be overruled and set aside."

The court sustained the exceptions of the defendants to the report of the special commissioner, whereupon plaintiff requested the court for special findings of fact on the interrogatories filed, Nos. 1 to 20, and further asked the court to make special declarations of law in writing as the conclusions of law of the court on the facts found, and asked specially for six declarations of law, all of which the court refused, and entered judgment sustaining the exceptions. The plaintiff moved for a new trial, which was overruled by the court, and plaintiff appealed to this court.

*W. H. Kornegay* and *John H. Crain* for appellant.

The members of a firm are neither severally nor jointly entitled to exemptions out of partnership property. State, ex rel vs Spencer, 64 Mo. 355; Richardson vs Adler, et al, 46 Ark. 43; Pond vs Kimball, 101 Mass. 105; in re Handlin, 3 Dill. 290; Bonsall vs Conley, 44 Penn. St. 447; Guptil vs McFee, 9 Kas. 30. And this is true even after dissolution of the partnership. State vs Day 29 N. E. 436; Wills vs Downs 38 Ill. App. 269; Trowbridge vs Cross, 117 Ill. 109; Fingerbuth vs Lochman, 37 Ill. App. 489.

*John B. Turner, James B. Burckhalter* and *Wm. T. Hutchings* for appellees.

Appellees were tenants in common. If not tenants in common, they were a non-trading partnership and entitled to their exemptions. Thompson on Homesteads and Exemptions, sec. 210; Newton vs Howe, 29 Wis. 531.

TOWNSEND, J. The appellant (plaintiff below) has assigned six specifications of error. The first error assigned is that the court erred in sustaining appellees' (defendant below) exceptions to the third, fourth, fifth, sixth, seventh, eighth, and ninth findings of the commissioner. The second, third, fourth, and fifth assignments of error are the alleged error of the court in refusing to make findings of fact in writing, separate from his conclusions of law; refusing to make declaration in the case, and to reduce his conclusions of law to writing, separate and apart from his conclusions of fact; refusing to make finding of fact as requested by appellant in two interrogatories propounded to the court; and refusing to make declarations of law on six propositions requested by appellant. The sixth assignment of error is that "the court erred in holding that the undivided one-third of the wheat in question could be claimed as exempt." The evidence in the case has not been brought up by the bill of exceptions, and all we can know about that evidence is what the commissioner has set out in his report.

There is no exception filed to either the first or second findings of the commissioner; hence we are to presume that they are admitted to be a correct statement of the facts. They are as follows: "First. That W. F. Hiatt, E. Z. Hiatt, and Arthur Hiatt had been for several years, prior to the levy of attachment in these cases, engaged in the business of raising wheat, and contributing to the business, and sharing the losses and profits and that the same relation between them existed at the time the attachment went into the hands of the marshal, and were levied. Second. I find that the property levied upon by the marshal in these cases

was property which had been contributed by one or the
other of W. F. Hiatt, E. Z. Hiatt, and Arthur Hiatt, to the
joint enterprise they were engaged in at the time they so
engaged in it, or that it was the increase or product there-
of, and particularly that the crop of wheat levied upon was
the result of such joint enterprise."

The first exception sustained by the court is to the
third finding of the commissioner, which is as follows:
"Third. I find that there was a partnership existing of
which W. F. Hiatt and E. Z. Hiatt were members, each hav-
ing an equal one-third interest in such partnership," Was
this a correct finding, under the admitted facts, set out in
the first and second findings of the commissioner? "Whether
an agreement creates a partnership or not depends on the
real intention of the parties to it.   *   *   *   But an agree-
ment to share profits and losses may be said to be a type
of a partnership contract.   Whatever difference of opinion
there may be as to other matters, persons engaged in any
trade, business, or adventure, upon the terms of sharing the
profits and losses arising therefrom, are necessarily to some
extent partners in that trade, business or adventure; nor is
the writer aware of any case in which persons who have
agreed to share profits and losses have been held not to be
partners." 1 Lindl. Partn. pp. 9, 10.   "The most unmis-
takable, and perhaps the most common, form of partner-
ship, is where two or more persons agree to contribute both
capital and labor, and to share in both profit and loss, equal-
ly or in certain specified proportions.   Such an agreement
being executed, there can be no question as to the existence
of a complete partnership."   T. Pars. Partn. (4th Ed.) §
65.   "It is not requisite to the constitution of a strict part-
nership that each partner should, as between themselves, be
liable to share indefinitely in the losses of the concern.   It
is sufficient if they are to share in the profits and in the
losses so far as they effect the capital advanced.   Nor is it

necessary that the partners should be proportionate joint owners of the capital. It is enough that they are jointly interested in the profits and losses." 1 Colly. Partn. § 45. The foregoing text writers seem to concur that the sharing of profits and losses constitutes a partnership, and this is what the commissioner found in this case. It is probable that the true test of a partnership is the intention of the parties. As between themselves, this is unquestionably the case. In the case at bar we have no information as to their intention, except what may be found in the findings of the commissioner. The appellees say in their brief that the court found that appellees were tenants in common, but the record does not show what view the court took of that question. We are of the opinion that the exception to the third finding of the commissioner should have been overruled.

The next important question in this case, in our view of it, is raised by the ruling of the court in sustaining appellees' exception to the fourth finding of the commissioner. Can a partner have exemption out of partnership assets when the same is levied upon under legal process? A learned author, after discussing this question and the decisions of different courts, says: "But it will not be necessary to enlarge this discussion—First. Because the subject has been gone over in the preceding subdivisions; and, second, because the courts have, by a very decided weight of authority, settled the doctrine that those statutes do not contemplate the setting apart of exempt property out of partnership assets.'' Thomp. Homest. & Exemp. § 194. Another author says: "There are cases recognizing the exemption of partnership property, but ordinarily the statutes favor the individual representing a family, or the follower of an avocation; and the general rule is that partnership property is not exempt when not expressly made so. * * * The question has been much discussed, but it

seems clear that a partner cannot claim as exempt to him property which he does not own. The firm is an artificial person, of which he is a part; but its property is not his. Therefore there must be statutory authorization before he can rightfully claim any portion of the partnership property, other than such authorization, as that which exempts certain property to individual debtor-owners." Wap. Homest. p. 904. "It does not appear that, at the time of the attachment, the plaintiffs had dissolved partnership, or had divided their joint property, or had a general settlement and winding up of their business. We agree with the plaintiffs' counsel that the statute is humane and beneficial in its purpose and operation, and fairly entitled to as liberal a construction as can be given it, consistently with its true and just interpretation. There are many difficulties, however, in the way of applying it to the case of co-partners and joint owners, and these difficulties we find to be insuperable. Property purchased with the joint funds of the firm, and constituting a portion of its capital, must necessarily be subject to all the incidents of partnership property. On the decease of one member of the firm, it would go to the surviving member, and he would have a right to hold it, to be used in settling the affairs of the concern, and paying its debts. In the case of numerous partners, can it be said that each would have the right to claim, as exempt from attachment for the joint debts, one hundred dollars' worth of tools and implements and another hundred dollars' worth of materials and stock; or is the whole firm to be considered as one debtor only? Does the exempted property in that case belong to the partners jointly, or does each take a separate share? It appears to us that the statute is intended to apply only to the case of a single and individual debtor. The exemption which it gives is strictly personal. The statute speaks in the singular number throughout, unless possibly the clause as to fishermen (Gen. St. c. 133, § 32, cl. 9) be an

exception.    Its apparent object is to  secure  to  the  debtor
the means of supporting himself and his  family,  by  follow-
ing his trade or handicraft with tools belonging to  himself.
It also provides that his family are to be secured in  the  en-
joyment of certain indispensable comforts  and  necessaries,
out of his property.  But property belonging to the firm can-
not be said to belong to either partner as his separate prop-
erty.    He has no exclusive interest in it.  It belongs as much
to his partner as it does to him, and cannot in a whole or  in
part be appropriated (so long  as  it  remains  undivided)  to
the benefit of his family,   It may be wholly  contingent  and
uncertain whether any of it will belong to him on the  wind-
ing up of the business and the settlement of his account with
the firm.    The exemption, in our  opinion,  is  several,  and
not joint.   It applies to the debtor in the  singular  number,
and is personal and individual only."   Pond vs Kimball, 101
Mass, 106.   In Thurlow vs Warren, 82·Me. 164,  the  agreed
state of facts was as follows:   It appeared that, at the time
the plaintiffs were adjudged insolvents, they were  the  sole
owners, in their co-partnership capacity, of a pair  of  oxen;
that they were the owners of no other  oxen,  either  as  co-
partners or as individuals; and  that  they  subsequently  re-
plevied them from their assignee, the defendant,  to  whom
the oxen had been delivered by the messenger of  the  court
of insolvency.    It was agreed that, if judgment  should  be
for the plaintiffs, they  were  to  recover  nominal  damages,
with full costs, and, if for defendant, he was to  have  judg-
ment for two hundred dollars, with interest and full  costs."
The court say that, "although in some jurisdictions the con-
trary view is taken, still the great weight of deliberate  and
well-considered cases hold that individual, and  not  partner-
ship, property is exempt,"—citing Pond vs Kimball, supra;
Bonsall vs Comly, 44 Pa. St. 442; Guptil vs McFee,  9  Kan.
30; In re Handlin, 3 Dill,  290,  Fed.  Cas.  No.  6,018.    The
latter case arose under the bankrupt act (sections 14 and 36),

and constitution of the state of Arkansas of 1868 (article 12 § 1): "Bankrupts who are co-partners are not entitled to separate or individual exemptions out of the partnership effects." Under the exemption laws of Arkansas as they existed in 1871, $2,000 was exempt to "any resident" of the state from execution or other final process. The partners, Handlin and Venny, claimed the amount of their individual schedules, and, in addition, a sufficient amount of the partnership assets to give each $2,000. The assignee refused the exemption out of the partnership assets. On appeal to the district court the assignee was reversed, and it was appealed to the United States circuit court, before Judge Dillon, and the court says: "The general principles of the law are against the allowance of ths exemption claimed. Where, as in this case, the partnership and all its members are declared bankrupt, the firm is treated as being dead, except to close up its affairs. There is no exemption to the firm as such; nor is it contended that there can be. But each of the partners claims an individual exemption to the amount of two thousand dollars out of the firm property, and at the expense of the firm creditors; and, if the claim is valid, it would be equally so if there were six partners, instead of two. It is a claim not depending upon the amount of capital which the partner making the claim contributed to the firm, nor upon the state of the accounts between him and his co-partners. He may never have put a dollar of capital into the firm or he may have drawn out all of his capital and owe the firm, and yet it is insisted that, not only as against his co-partners, but as against the creditors of the firm, he may in default of not possessing individual estate, lay his hands upon two thousand dollars of the joint estate, and appropriate it as exempt. This, I am sure, he could not do before bankruptcy without his co-partner's consent; and after the bankruptcy the co-partner is incapable of giving any consent to affect rights fixed by that event. The pretension set

(17)

up in this case, whether considered with reference to the rights of co-partners or the rights of the firm creditors, cannot be maintained. The case might be different as to mere ownership where no partnership relation existed, but it is not neccessary to consider this point. While the adjudged cases relating to the question under consideration are not uniform, a careful examination of all of them justifies me in saying that they are quite decisively against the proposition that individual exemptions can be allowed out of the partnership estate, at the expense of the joint creditors. Pond vs Kimball, 101 Mass. 105; Guptil vs McFee, 9 Kan. 30, a well-considered case, following Pond vs Kimball, and disapproving Stewart vs Brown, 37 N. Y. 350; Burns vs Harris, 67 N. C. 140; Bonsall vs Comly, 44 Pa. St. 442, 447; In re Blodgett, 10 N. B. R. 145, Fed. Cas. No. 1,555; In re Hafer, 1 N. B. R. 547, Fed. Cas. No. 5,896; Amphlett vs Hibbard, 29 Mich. 298; In re Price, 6 N. B. R. 400, Fed. Cas. No. 11,410; Wright vs Pratt, 31 Wis. 99. Contra: In re Young, 3 N. B. R. 440, Fed. Cas. No. 18,148; In re Rupp 4 N. B. R. 95, Fed. Cas. No. 12,141; Stewart vs Brown, 37 N. Y. 350; Radcliff vs Wood, 25 Barb. 52; In re McKercher, 8 N. B. R. 499." In Richardson vs Adler, 46 Ark. 48, the court say: "The members of an insolvent firm are not entitled to the exemptions, allowed by law, out of the partnership property after it has been seized to satisfy the demands of creditors of the firm. This proposition is well settled both upon reason and authority. The interest of each partner in the partnership assets is his portion of the residum after all the liabilities of the firm are liquidated and discharged. Property belonging to the firm cannot be said to belong to either partner as his separate property. It is contingent and uncertain whether any of it will belong to him on the winding up of the business and the settlement of his accounts with the firm. 'Joint property is deemed a trust fund, primarily to be applied to the discharge of partner-

ship debts, against all persons not having a higher equity. A long series of authorities has established this equity of the joint creditors, to be worked out through the medium of the partners, that is to say, the partners have a right, inter sese, to have the partnership property first applied to the discharge of the partnership debts, and no partner has any right, except to his own share of the residue; and the joint creditors are, in case of insolvency, substituted in equity to the rights of the partners as being the ultimate cestuis que trustent of the fund to the extent of the joint debts."

From quite an extensive examination of the authorities, we are of the opinion that partnership assets are not exempt to the individual partners and that the exception to fourth finding of the commissioner should have been overruled. The view we take of this case makes it necessary to discuss the other assignments of error filed by appellant.

*Exemption and partnership property*

The appellees suggest that the appeal in this case was premature. The first, second and third subheads of section 1265, Mansf. Dig., are as follows: "First. In a judgment in an action commenced in the inferior courts, and, upon the appeal from such judgment, to interview any intermediate order involving the merits and necessarily affecting the judgment. Second. In an order affecting a substantial right made in such action, when such order in effect determines the action, and prevents a judgment from which an appeal might be taken, or discontinues the action; and when such order grants or refuses a new trial, or when such order strikes out an answer, or any part of an answer, or any pleading in an action; but no appeal to the supreme court from an order granting a new trial, in a case-made or bill of exceptions, shall be effectual for any purpose, unless the notice for appeal contains an assent on the part of the appellant that, if the order be affirmed, judgment absolute shall be rendered against the appellant.

Third.   In a final order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment, and upon such appeal, to review any intermediate order involving the merits and necessarily affecting the order appealed from."   The judgment appealed from seems to be a final order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment.   We think the appeal was proper, but that the judgment of the court below in sustaining the exceptions to the findings of the commissioner, and overruling the motion of appellant to quash the writs of supersedeas issued by the clerk of the court, was erroneous, and the same is hereby reversed, and the case remanded for further proceedings.   Reversed

*Appeal.*
*Final order.*

CLAYTON, J., concurs.